STATE of North Dakota, Plaintiff and Appellee,

v.

Richard W. SKJONSBY, Defendant and Appellant.

Cr. No. 932.

Supreme Court of North Dakota.

Sept. 29, 1983.

Richard W. Skjonsby, pro se.

Bruce D. Quick, Asst. State's Atty., Fargo, for plaintiff and appellee.

PAULSON, Surrogate Justice.

This is an appeal by the defendant, Richard W. Skjonsby, from a final judgment of the District Court of Cass County, summarily dismissing his application for post-conviction relief. We reverse.

Richard W. Skjonsby [Skjonsby] was convicted of murder in the March 26, 1980, shooting death of Michael J. Kurtz at the Biltmore Motor Hotel in Fargo. Skjonsby was also convicted of attempted murder in the wounding of Charlotte Skjonsby in the same incident. The convictions were affirmed on appeal to this court. *State v. Skjonsby*, 319 N.W.2d 764 (N.D.1982).

On August 23, 1982, Skjonsby applied to the District Court of Cass County for post-conviction relief pursuant to Chapter 29–32 of the North Dakota Century Code. In his application, he requested that the court "set aside his conviction of the offense of murder and attempted murder and grant a new trial". In support of his application, Skjonsby has alleged: (1) that he was denied effective assistance of counsel at his

trial; (2) that as a result of his deteriorated physical, mental, and emotional condition and the various medications and drugs administered to him while he was incarcerated in the Cass County Jail, he was incapable of assisting in his own defense; and (3) that a psychiatric examination performed on him at the Jamestown State Hospital was invalid because two of the doctors who participated in the examination were, at that time, engaged in illegal counterfeiting activities.

An understanding of Skjonsby's allegations requires reference to events not set forth in our earlier opinion in this matter. *Skjonsby I, supra* 319 N.W.2d 764.

When Skjonsby was arrested on March 26, 1980, he immediately contacted two local attorneys who interviewed him in the Cass County Jail. It soon became apparent that Skjonsby was financially unable to retain these attorneys, so two other attorneys were appointed by the trial court to represent him pursuant to the public defender contract then in effect in Cass County. Problems in the attorney-client relationship arose which culminated in Skjonsby's discharge of these attorneys. The attorneys also moved the court to allow them to withdraw from representation, citing ethical considerations. Fred Kraemer, who had in the meantime succeeded to the public defender contract, was then appointed to represent Skjonsby. Very shortly following his appointment, Kraemer was removed from the case on motion of the state's attorney because of a possible conflict of interest. The attorney who ultimately represented Skjonsby at trial was then appointed to represent him.

During the short time that Kraemer represented Skjonsby, Kraemer made a recording of an interview with Skjonsby which was conducted in the Cass County Jail. It is this interview which is the focus of Skjonsby's application for post-conviction relief.[1] A copy of the recording was given to Skjonsby's trial counsel for his use in preparation for the trial.

At trial, Richard and Charlotte Skjonsby testified that her shooting was accidental and that the shooting of Michael J. Kurtz was in self-defense. They also testified that the weapon used belonged to Kurtz. This was in contradiction to Charlotte's testimony before the grand jury which indicted Skjonsby. She subsequently pleaded guilty to perjury in connection with her trial testimony. Skjonsby now alleges that his trial counsel, in conjunction with the attorney who preceded him, and Charlotte Skjonsby, fabricated the testimony that he and Charlotte gave at trial. He alleges that the perjured testimony was to enhance the possibility that Charlotte would be successful in her civil suit against the Biltmore Motor Hotel. He further alleges that his physical, mental, and emotional condition at the time of trial was such that he was incapable of making rational decisions regarding his case and he was blindly dependent upon his counsel's advice. Skjonsby further alleges that the various drugs and medications administered to him by the county doctor during his incarceration further clouded his thinking and increased his susceptibility to the pressures and blandishments of his counsel.

■ Chapter 29–32, N.D.C.C., is North Dakota's codification of the Uniform Post-Conviction Procedure Act. Section 29–32–01, N.D.C.C., provides in relevant part that:

"1. Any person who has been convicted of, or sentenced for, a crime and who claims:

"a. That the conviction or the sentence was in violation of the constitution, laws or treaties of the United States or the constitution or laws of this state;

. . . . .

"d. That there exists evidence of material facts, not previously presented and heard, that requires vacation of the

---

1. Skjonsby contends that the truth concerning the incident at the Biltmore Motor Hotel is contained in the statement which was recorded by Kraemer and that if this testimony were to be presented at trial the jury could have found him guilty of no more than manslaughter.

conviction or sentence in the interest of justice;

. . . . .

may institute, without paying a filing fee, a proceeding under this chapter to secure relief."

Skjonsby alleges that his trial counsel's subornation of perjury constitutes a violation of his right to effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution and made applicable to the States by the Fourteenth Amendment. He also alleges the existence of material facts not previously considered, which he contends requires vacation of his conviction and remand for a new trial. His action is therefore properly within the purview of the Uniform Post-Conviction Procedure Act.

The district court did not afford Skjonsby a full evidentiary hearing to substantiate his allegations. Rather, the judge concluded that it was immaterial whether the false testimony was fabricated by the attorneys, by Charlotte, or by the defendant himself, because the defendant knowingly embraced the fabrications. He further concluded, based upon his own observations during the trial, the evaluation of Skjonsby conducted by the Jamestown State Hospital staff prior to trial, and his review of the testimony and proceedings, that Skjonsby was fully competent to assist in his own defense at trial. In response to Skjonsby's third contention, the judge determined that there was no evidence that the unrelated criminal activities of the two doctors affected their objectivity in their proper professional duties, and that the evaluation was the product of a fully staffed series of examinations and evaluations which could not be presumed to be invalidated by the commission of unrelated crimes by one or even two of the seven professional participants.

In reviewing Skjonsby's allegations and the opinion of the district judge, it is clear that the principal issue is whether or not Skjonsby was entitled to an opportunity to substantiate his charges in a full evidentiary hearing. We believe he was so entitled.

Subsection 2 of § 29–32–06, N.D.C.C., of the Uniform Post-Conviction Procedure Act, provides that:

"*Pleadings and judgment on pleadings.—*

. . . . .

"2. When a court is satisfied, on the basis of the application, the answer or motion, and the record, that the applicant is not entitled to post-conviction relief and no purpose would be served by any further proceedings, it may indicate to the parties its intention to dismiss the application and its reasons for so doing. The applicant shall be given an opportunity to reply, or on default thereof, the court may order the application dismissed or grant leave to file an amended application or direct that the proceedings otherwise continue. *Disposition on the pleadings and record is not proper if there exists a material issue of fact.*" [Emphasis added.]

We believe that Skjonsby's allegations have raised significant issues of material fact so as to entitle him to an evidentiary hearing.

█ The district court concluded that it was immaterial whether Skjonsby's counsel had fabricated his testimony because Skjonsby had "embraced the false story as long as there was a chance that he would either be acquitted by the jury or his conviction overturned by the North Dakota Supreme Court". We have stated in *State v. Motsko,* 261 N.W.2d 860, 864 (N.D.1978), that "Parties will not be relieved from free, calculated, deliberate choices they have made. [Citations omitted.] . . . [I]t is not our function to allow second guesses on trial strategy". Skjonsby, however, has raised the question of whether his choice was, in fact, "free, calculated", or "deliberate". He has alleged that, because of his physical and mental condition, he was not capable of making a rational choice. He has provided, in the form of affidavits, statements, scientific publications, and other documents, evidence which raises the issue of his competence to stand trial. These allegations raise a serious issue of fact. We

are not expressing any views on the credibility of the allegations.

The district court, in dismissing the application, relied on the pleadings and the record. Such a summary disposition was inappropriate in light of Skjonsby's allegations of misconduct by his attorney, his own incompetence to stand trial, and his attack on the validity of the conclusions reached by the staff of the Jamestown State Hospital. We therefore reverse and remand to the district court for an evidentiary hearing to be limited to the issues outlined above.

Reversed.

ERICKSTAD, C.J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.