In the Matter of the ADOPTION OF June Madeira QUENETTE.

Terry and Sally QUENETTE, Petitioners and Appellees,

v.

Richard William SKJONSBY, natural father of June Madeira Quenette, Respondent and Appellant,

Donald L. Schmid, Administrator, Child Welfare Services of the Department of Human Services of the State of North Dakota, Respondent.

Civ. No. 10434.

Supreme Court of North Dakota.

Dec. 15, 1983.

Schneider, Schneider & Schneider, Fargo, for petitioners and appellees; argued by Steven C. Schneider, Fargo.

Richard W. Skjonsby, pro se.

PEDERSON, Justice.

Richard William Skjonsby appealed from a judgment terminating his parental rights as the natural father of June Madeira (Skjonsby) Quenette. Skjonsby, pursuing this appeal pro se, fails to precisely articulate the issues. Essentially, however, he argues that the trial court erred (1) in not allowing him to appear personally at the hearing, (2) in denying his motion to proceed in forma pauperis, and (3) in determining that he had abandoned June. We conclude that the court did not err and, accordingly, affirm the judgment.

Richard and Sally Hutchinson Wallwork Skjonsby Quenette were married in 1975 and divorced in 1976. Sally was awarded custody of their daughter June, who was born in 1976, and Richard was ordered to pay child support of $125 per month. Sally married Terry Quenette in 1980.

In 1982 Sally petitioned for a termination of Richard's parental rights, pursuant to the Revised Uniform Adoption Act (Ch. 14–

15, NDCC), alleging that he (1) had failed to pay child support as ordered, (2) had failed significantly to communicate with June for over one year, (3) had abandoned June, and (4) was unreasonably withholding his consent to June's adoption. Terry petitioned to adopt June during the same proceeding.

Skjonsby was then, and still is, serving a life sentence in the North Dakota State Penitentiary. He responded to the petition by denying that he had abandoned June, alleging that he could provide some support for June through his employment at the penitentiary, and opposing Terry's adoption of June. He further petitioned the court for a writ of habeas corpus to allow him to testify in person and requested permission to proceed in forma pauperis, alleging that he was indigent. The court denied the writ on the grounds that Skjonsby presented a security risk, that he did have counsel, and that he could appear by deposition. Skjonsby's motion to proceed in forma pauperis was also denied.

At the conclusion of the hearing testimony, Skjonsby's counsel declined the trial court's offer of additional time to depose Skjonsby. The court found that Skjonsby had not communicated with June by any means from June 1981 until December 1982, had made no support payments from July 13, 1977 through September 30, 1979, and from March 20, 1980 to the present, and that his incapacity and unavailability were likely to cause serious emotional harm to June. Pursuant to § 14–15–19, NDCC,[1] the court ordered Skjonsby's pa-

rental rights terminated. No ruling was made on Terry's petition to adopt June.

In *Pritchett v. Executive Director of the Social Service Board,* 325 N.W.2d 217 (N.D.1982), we held that the proper scope of appellate review of a termination of parental rights based on abandonment under Chapter 14–15, NDCC, is the same as that of one based on abandonment under Chapter 27–20, NDCC (Uniform Juvenile Court Act), i.e., a form of de novo proceeding. Although *Pritchett* concerned only abandonment as a reason for terminating parental rights, we find the rationale expressed there equally applicable to the other grounds for termination listed in § 14–15–19(3), NDCC. The party seeking termination has the burden of proving the necessary grounds by clear and convincing evidence. We have also said that the question of abandonment (or other grounds for terminating parental rights) is one of fact, and a finding of abandonment will be upheld on appeal where there is substantial evidence in the record to support that finding. *Matter of Adoption of Gotvaslee,* 312 N.W.2d 308, 317 (N.D.1981).

Skjonsby argues that his incarceration is not sufficient in and of itself to terminate his parental rights. *In the Interest of F.H.,* 283 N.W.2d 202 (N.D.1979). He also argues that had he been at the hearing he would have presented evidence showing that he had communicated, or attempted to communicate, with June. Furthermore, he claims that if his post-conviction proceedings[2] are successful, his life sentence will

---

1. Section 14–15–19, NDCC concerns the relinquishment and termination of parental rights. The pertinent part provides that parental rights may be terminated for the following reasons:

   "3. In addition to any other proceeding provided by law, the relationship of parent and child may be terminated by a court order issued in connection with an adoption proceeding under this chapter on any ground provided by other law for termination of the relationship, and in any event on the ground (a) that the minor has been abandoned by the parent, (b) that by reason of the misconduct, faults, or habits of the parent or the repeated and continuous neglect or refusal of the parent, the minor is without proper parental care

   and control, or subsistence, education, or other care or control necessary for his physical, mental, or emotional health or morals, or, by reason of physical or mental incapacity the parent is unable to provide necessary parental care for the minor, and the court finds that the conditions and causes of the behavior, neglect, or incapacity are irremediable or will not be remedied by the parent, and that by reason thereof the minor is suffering harm, or (c) that in the case of a parent not having custody of a minor, his consent is being unreasonably withheld contrary to the best interest of the minor."

2. See *State v. Skjonsby,* 338 N.W.2d 628 (N.D. 1983).

be reduced and he will be able to develop a closer relationship with his daughter.

■ While we do not dispute Skjonsby's assertion that incarceration alone is not a proper ground for terminating parental rights, his reliance on *In the Interest of F.H.* is misplaced. He overlooks the fact that after reviewing many cases from other jurisdictions which had considered similar situations, we concluded in *F.H.* that imprisonment, combined with other factors such as parental neglect, withholding of affection, lack of financial or other support, and no contact could support a finding of abandonment.

■ In *F.H.* we also held that a convict has no constitutional right to appear personally in a civil proceeding. Ordinarily, due process is met if he has been allowed to appear through counsel and by deposition. We noted that "any right to appear personally would have to rest upon convincing reasons and would ultimately be left to the sound discretion of the trial court." *Id.* at 209. We conclude that the trial court did not abuse its discretion when it denied Skjonsby's petition.

In *In the Interest of R.L.D.*, 253 N.W.2d 870, 877 (N.D.1977), we noted that the primary purpose of the Uniform Juvenile Court Act (Ch. 27–20, NDCC) is to protect the welfare of the child. The welfare of the child is also the primary consideration in adjudicating the issue of parental rights with respect to children. *In the Interest of F.H., supra,* 283 N.W.2d at 213.

■ The terms "welfare" and "best interests" of the child have different meanings in custody proceedings and in termination proceedings. Ordinarily, in custody proceedings the court considers competing acceptable alternatives for raising the child. In termination proceedings, the terms encompass "the total relationship between child and parent pertaining to and involving heterogeneous values, rights, duties, and concepts." *Kottsick v. Carlson,* 241 N.W.2d 842, 853 (N.D.1976). Competing alternatives have no place in termination proceedings where the only

consideration is whether or not it is acceptable to let the parent retain his parental rights.

■ In *F.H.,* 283 N.W.2d at 213–214, we noted that the court's determination rests upon a finding of abandonment, consent, or the parents' continued failure to provide minimum standards of care, and that where any of those circumstances exist, the welfare of the child mandates that the parents' rights be terminated. The same requirement applies where any of the conditions enumerated in § 14–15–19(3), NDCC, exist.

■ The record in this case shows that Skjonsby last saw his daughter in January 1981, and his only communications with her after he went to the state penitentiary were a birthday card in June 1981 and a Christmas card in 1982, after the termination proceedings had commenced. Although Skjonsby stated that he could designate part of his monthly income from employment at the penitentiary for June's support, he has made no effort to do so. There is no guarantee that his post-conviction proceedings, which could last for some time, will be successful.

■ In the interest of judicial economy and because of the extremely unusual circumstances present in this appeal, this court has taken the exceptional step of considering four letters which Skjonsby submitted at oral argument. The letters, postmarked between April 7, 1981 and May 15, 1981, comprise the evidence Skjonsby says he would have presented at the hearing to show that he had communicated, or attempted to communicate, with June. Only the first letter specifically refers to any communication from Skjonsby to June. All four letters fall outside the June 1981 to December 1982 time period which the trial court used to determine abandonment and thus do not affect the disposition of this appeal.

Skjonsby acknowledged to this court that assuming he serves out his life sentence, it would probably be best for his daughter to be raised by Sally and Terry. It is in the best interest of the child that a proceeding

for termination of parental rights and for adoption should not drag on. We agree with the trial court that Sally has shown, by clear and convincing evidence, that Skjonsby has abandoned June within the meaning of § 14–15–19(3)(a), NDCC, and that it is in June's best interests that Skjonsby's parental rights be terminated.

We affirm the judgment of the district court.

ERICKSTAD, C.J., and SAND, J., concur.

VANDE WALLE, Justice, dissenting.

I believe this matter should be remanded for an additional hearing at which Skjonsby is permitted to appear, at least by deposition. I agree that it was not necessary that Skjonsby appear in person at the hearing concerning the termination of his parental rights. The trial court gave Skjonsby's counsel the opportunity to depose Skjonsby but apparently this was not done. Although the majority opinion relies on *In Interest of F.H.*, 283 N.W.2d 202 (N.D. 1979), a review of that case indicates the parent who was incarcerated appeared by deposition. Our law, Chapter 27–20, N.D. C.C., gives the parent whose parental rights are proposed to be terminated the opportunity to be represented by counsel. I cannot conceive how a defense against an allegation of abandonment can be maintained without the parent's appearing in person or by deposition.

Furthermore, this case is distinguishable from *Mortenson v. Tangedahl*, 317 N.W.2d 107 (N.D.1982), in which the parent whose parental rights were terminated was not incarcerated but failed to appear at the hearing and provided no satisfactory explanation for his failure to do so.

There is no doubt that the events surrounding Skjonsby are bizarre. However, Skjonsby apparently maintained contact with his child until the time of his incarceration. He should at least be permitted to explain his actions since that time.

GIERKE, J., concurs.