In the Matter of the Adoption
of Steven Richard Thompson,
a Minor.

Dwight W. THOMPSON, Petitioner
and Appellee,

v.

Frank L. KING, Respondent
and Appellant,

and

Executive Director of the Social
Service Board of the State of
North Dakota, Respondent.

Civ. No. 11095.

Supreme Court of North Dakota.

Sept. 30, 1986.

Degnan, McElroy, Lamb, Camrud, Maddock & Olson, Grand Forks, for petitioner and appellee; argued by Gordon W. Myerchin.

Hand & Triplett, Grand Forks, for respondent and appellant; argued by James S. Hand.

GIERKE, Justice.

This is an appeal from that portion of a judgment of the District Court of Grand Forks County terminating the parental rights of Frank L. King, in and to one minor child. The judgment was issued in conjunction with an adoption proceeding initiated by the child's adoptive father, Dwight W. Thompson. The basis for that portion of the judgment which terminated parental rights was that Frank L. King had abandoned his child and that the inability of King to perform parental duties would result in harm to the child. King asserts that the termination of his parental rights was inappropriate as there was not clear and convincing evidence of abandonment or unfitness. King also raises numerous procedural errors in the adoption proceeding from which he appeals, particularly citing notice deficiencies in the termination of his parental rights. Finally, King objects to the admission into evidence of a letter written by Dr. Matthew Levine which prejudiced the court in its termination of his parental rights at the adoption hearing. We affirm.

Frank L. King and Ruth Ann Thompson were formerly husband and wife. Steven R. Thompson, born June 5, 1976, is the only child born of the marriage. The parties were married in August 1974. They were separated in April 1979 and were divorced July 11, 1980. The decree of divorce granted full legal and physical custody of Steven to Ruth. King was granted reasonable visitation and was ordered to pay $75 per month child support.

In 1981, King was court-martialed for numerous sexually-related offenses, as well as two counts of obstructing justice, and began serving a 10-year sentence at the United States Disciplinary Barracks, Fort Leavenworth, Kansas. King immediately appealed his convictions and during post-conviction proceedings was granted review of his court-martial based upon the findings of Dr. Matthew Levine that King suffered from two serious psychological disorders which could have affected his capacity to appreciate the criminality of his conduct. The review of King's appeal was pending at the time of the termination proceeding. The documents utilized by the United States Army for King's post-conviction proceedings are entitled Post-Trial Review and were made a part of the record during the termination proceedings.

In 1984, Dwight Thompson, Ruth's new husband, petitioned for a termination of King's parental rights, pursuant to § 14–

15–19, North Dakota Century Code.[1] The petition sought to terminate the parental rights of King either by his consent, or by court-ordered termination. King refused to consent to the termination. The trial court concluded that King, by his conduct, had abandoned Steven under § 14–15–19(3)(a), N.D.C.C. Further, the court concluded that King's inability to perform parental duties would result in harm to the child under § 14–15–19(3)(b), N.D.C.C.

■ The proper scope of review on appeal of a termination of parental rights, pursuant to § 14–15–19(2) and (3) is de novo review. *Matter of Adoption of Quenette*, 341 N.W.2d 619 (N.D.1983); *Pritchett v. Executive Dir. of Soc. Serv. Bd.*, 325 N.W.2d 217 (N.D.1982). The party seeking the termination has the burden of proving the necessary grounds by clear and convincing evidence. The question of grounds for terminating parental rights is one of fact and a finding of abandonment will be upheld on appeal where there is substantial evidence in the record to support the finding. *Quenette, supra; Matter of Adoption of Gotvaslee*, 312 N.W.2d 308 (N.D.1981).

As to the issue of abandonment, King properly asserts that we cannot consider his incarceration to be the controlling factor. *Quenette, supra*. Certainly, a parent incarcerated has a difficult time maintaining physical contact with a child. We concluded in *In the Interest of F.H.*, 283 N.W.2d 202 (N.D.1979), and reiterated in *Quenette*, that imprisonment, combined with other factors such as parental neglect, withholding of affection, lack of financial or other support, and no contact would support a finding of abandonment. *Quenette, supra; Interest of F.H., supra*.

■ King has been incarcerated since November 1981. During this period of incarceration, he has been unable to provide Steven with any financial support. He has not seen Steven since approximately July 1981. He has also been unable to perform any parental duties. These deficiencies on King's part may stem from his incarceration and we do not consider them to be conclusive evidence of abandonment. However, when viewed in conjunction with other behavior or lack of it by King, we conclude that the trial court has properly determined that King abandoned Steven.

King has made no attempt to telephone Steven since December 1982. He has not written directly to Steven prior to the initiation of this action but rather has made inquiries sporadically through other family members. He has sent gifts on occasion which were purchased and mailed by the Salvation Army upon King's request but these gifts were not personally tagged by King. There is conflicting evidence in the record as to the quality and amount of communication that King has attempted to maintain with Steven since the 1979 separation. However, King is not aware of his son's progress in school, his general activities or even whether or not the boy is "happy." There is substantial evidence in the record to support the trial court's finding of abandonment.

King further argues that the trial court did not have clear and convincing evidence which established his unfitness as a parent.

King is serving a 10–year sentence. There is no guarantee that his post-conviction proceedings will be successful. The sole issue at the post-conviction proceedings is a determination of King's sanity at the time of the offenses.

The only evidence to be considered for the determination of King's sanity at the time of his court-martial is psychiatric testimony.[2] King relies on this testimony for

---

1. Actually, Thompson filed two petitions. The first petition sought to terminate King's parental rights, while the second petition provided for Thompson's adoption of Steven.

2. The psychiatric testimony is in the form of a letter dated January 11, 1984, and states as follows:

"a) It is my opinion that Captain King presently suffers from a mental or emotional disorder.
  1. The nature of this disorder is
  AXIS I: 296.70 Atypical Bipolar Disorder which is characterized by manic features in

post-conviction relief. We read this testimony as an indicator that King would have a difficult time performing his parental duties.

Further, if the conviction should stand we, as did the trial court, must note the seriousness and nature of the crimes with which King was charged and found guilty. King was a psychology intern with the United States Army. He had received Masters Degrees in clinical counseling of psychology and education and was pursuing a doctorate. His position in the Army demanded he counsel Army personnel and their families on a variety of subjects. While acting in this capacity, he was charged with and convicted of improprieties which occurred during or following sessions with his patients. He was found guilty of performing several sexual acts with female patients, sexually fondling female patients, conduct unbecoming an officer and obstruction of justice. The trial court found that King's "utter lack of concern with the potentially traumatizing effect [on Steven] of his behavior is remarkable." Further, the court found that King, although not admitting guilt, maintains that the conduct involved is not inappropriate for a psychologist in the performance of his duties. The record also establishes that King has admitted to Ruth that he has a history of sexually-abusive behavior.

■ We agree with the trial court that Thompson established by clear and convincing evidence the ground necessary for terminating King's parental rights within the meaning of § 14–15–19(3)(a) and (b), N.D. C.C. Therefore, the adoption is affirmed.

King also cites a number of procedural errors in the adoption proceeding from which he appeals. Initially, King argues that, as an incarcerated prisoner unable to attend the hearing, he should be granted special procedural protections in the adoption proceeding. Particularly, King contends that because of his appeal and pending freedom he should be granted a continuance so that he can appear personally at the adoption hearing. Alternatively, King argues that he be given the opportunity to rebut Thompson's evidence based upon the completed transcript of the hearing.

■ Through court-appointed counsel, King was permitted "to continue" the adoption proceeding no fewer than five times. On the last four occasions, the continuances were based upon his claim that he would soon be free from prison due to the appeals process. In *Quenette*, we stated that a proceeding for termination of parental rights and adoption should not drag on. *Id.* at 622–23. We agree with the district court that this adoption has dragged on too long and conclude the court did not abuse its discretion by denying King's motion for a continuance.

■ Similarly, we cannot agree with King that he was denied due process because he was not permitted an opportunity to rebut the testimony and evidence presented by the Thompsons at the time of the adoption hearing. Due process is satisfied when a convict in a proceeding for termination of parental rights and adoption is allowed to appear through counsel and by deposition. *In the Interest of F.H.*, 283 N.W.2d 202, 209 (N.D.1979). King was represented by court-appointed counsel, had the opportunity to prepare for the

an individual who previously had a major depressive episode.

AXIS II: 301.89 Mixed Personality Disorder with paranoid, narcissistic, and dependent traits.

2. These are serious disorders. The first has been termed manic-depressive disorder, and is considered to be a psychosis, indicating a major mental disorder, with a loss of contact with reality.

\*　\*　\*　\*　\*　\*

"h) Although it is possible that Captain King is using his psychological training to simulate insanity to avoid criminal responsibility, it is highly unlikely that this is actually the case, as his abnormal and psychotic behavior has been observed consistently over an extended period of time by a variety of different examiners of different disciplines. There is also historical evidence that his mother suffers from the same disorder, which in fact does have a strong tendency towards hereditary transmission."

adoption hearing for over a year, and was deposed in anticipation of the hearing.

■ We do not intend to enlarge a prisoner's due process rights in adoption proceedings by guaranteeing him the opportunity to rebut evidence presented at the hearing. To do so would lengthen the proceedings to an even greater extent. We conclude that King, in light of the protections evident in this case, is not denied procedural due process simply because he is not permitted to rebut the evidence presented at the adoption hearing.

King's final contention is that he was given insufficient notice under the statutory guidelines established in Chapter 14–15, N.D.C.C., to meet the requirements of due process. Specifically, King claims he was not given notice of the effect the adoption proceeding would have on his parental rights nor was he given adequate notice of the specific facts and circumstances permitting termination of his parental rights on the grounds of parental unfitness and abandonment. King argues that because of these notice deficiencies this Court should reverse the termination of his parental rights and the adoption. We disagree.

Section 14–15–11(1), N.D.C.C., provides that:

"After the filing of a *petition to adopt* a minor ... notice ... shall be given by the petitioner to ... (d) any person identified by the court as a natural parent or possible natural parent of the minor, upon making inquiry to the extent necessary and appropriate, as in proceedings under section 27–20–45 and section 14–17–24, *unless* the person has relinquished parental rights or *his parental rights have been previously terminated by a court....*" [Emphasis added.]

This section incorporates the language and notice requirements of §§ 27–20–45 and 27–20–46, N.D.C.C., into a petition for adoption. These sections require the petition for adoption to apprise the natural parent of the fact that through the adoption hearing all of his parental rights will be terminated upon order of the court. Section 27–20–46, N.D.C.C. In this case, where King's parental rights were terminated by the court prior to the adoption, the statement required by § 14–15–11(1)(d), N.D.C.C., was not necessary for the petition for adoption.[3]

King's argument that the petition for termination of parental rights also requires notice of the effect of the termination is meritless. Section 14–15–11(1)(d) clearly applies solely to petitions for adoption. King's need for notice of the effect of the hearing in a termination proceeding is difficult to comprehend since he was served with a document entitled Petition for Termination of Parental Rights. King received notice of the effect of the adoption hearing when he received the Petition for Termination of Parental Rights as required under Section 14–15–11(1)(d), N.D.C.C.

■ It is also King's position that, since the petition for termination of parental rights is devoid of any specific facts or circumstances, Thompson is precluded from asserting abandonment and unfitness as grounds for terminating King's parental rights. King argues that because of this omission in the petition he was not given notice of the Thompsons' grounds for termination. We hold, under the circumstances of this case, that King was given adequate notice to support the termination of his parental rights under § 14–15–19(3), N.D.C.C.

3. In *Kottsick v. Carlson,* 241 N.W.2d 842 (N.D. 1976), we permitted the termination question to be determined at the same time as an adoption proceeding under Chapter 14–15, N.D.C.C., provided that the termination issue was resolved first, followed by the adoption. *Kottsick,* at 853; *see also* § 14–15–19(1), N.D.C.C. This does not require two separate hearings. *Kottsick, supra.* In the instant case, King was put on notice of

the effect of the proceedings against him when he was served with the Petition for Termination of Parental Rights. Because the termination question was the first issue decided at the adoption hearing, the notice of the effect of the adoption required under Section 14–15–11(1)(d), N.D.C.C., was not necessary. There is no other possible interpretation.

Thompson's petition notified King of the legal basis for terminating his parental rights under § 14–15–19(3), N.D.C.C., but failed to state any particular incidents supporting his allegations.[4] Standing alone, Thompson's petition does not adequately meet due process guarantees. Given the nature of the parental rights at stake, procedural due process requires that, in addition to the legal standards involved, Thompson apprise King of the factual circumstances behind the proposed termination. *In Re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *Alsager v. District Court of Polk County, Iowa*, 406 F.Supp. 10 (S.D.Ia.1975), *aff'd*, 545 F.2d 1137 (8th Cir.1976); and *Syrovatka v. Erlich*, 608 F.2d 307 (8th Cir.1979), *cert. denied*, 446 U.S. 935, 100 S.Ct. 2152, 64 L.Ed.2d 788, *reh'g denied*, 448 U.S. 910, 100 S.Ct. 3056, 65 L.Ed.2d 1140.

■ A petition for termination of parental rights brought under the Revised Uniform Adoption Act (Chapter 14–15, N.D.C.C.) citing only the termination language of Section 14–15–19, N.D.C.C., does not sufficiently meet the procedural due process protections guaranteed to the natural parent. Section 14–15–19(3) states as follows:

"3. In addition to any other proceeding provided by law, the relationship of parent and child may be terminated by a court order issued in connection with an adoption proceeding under this chapter on any ground provided by other law for termination of the relationship, and in any event on the ground (a) that the minor has been abandoned by the parent, (b) that by reason of the misconduct, faults, or habits of the parent or the

repeated and continuous neglect or refusal of the parent, the minor is without proper parental care and control, or subsistence, education, or other care or control necessary for his physical, mental, or emotional health or morals, or, by reason of physical or mental incapacity of the parent is unable to provide necessary parental care for the minor, and the court finds that the conditions and causes of the behavior, neglect, or incapacity are irremediable or will not be remedied by the parent, and that by reason thereof the minor is suffering or probably will suffer serious physical, mental, moral, or emotional harm, or (c) that in the case of a parent not having custody of a minor, his consent is being unreasonably withheld contrary to the best interest of the minor."

A bare assertion of the language from § 14–15–19(3) in a petition for termination of parental rights is not enough. The petitioner must recite the particular statutory reasons relied upon or provide some factual basis for termination, thereby notifying the respondent of the circumstances he must prepare to defend against.

King, however, was apprised of the factual basis for terminating his parental rights during the extensive time period involved after the petition was filed. Subsequent to the filing of the petitions for termination and adoption, King received numerous continuances extending the time period to over one year from the date of the original hearing. During this time, considerable discovery occurred including interrogatories, King's deposition, and nu-

---

4. The legal basis for Thompson's Petition for Termination of Parental Rights states as follows:

"That the parental rights of Frank L. King should be terminated pursuant to § 14–15–19(2) of the North Dakota Century Code on the grounds that Frank L. King has relinquished all parental rights in the manner provided for by North Dakota Century Code § 14–15–19(2).

"OR IN THE ALTERNATIVE

"That the parental rights of Frank L. King should be terminated pursuant to § 14–15–19(3) in that it is in the best interest of Steven Richard that the rights be terminated so as to be able to complete his adoption by Dwight W. Thompson."

However, the petition features no factual allegations notifying him of Thompson's assertion of abandonment under § 14–15–19(3)(a) or unfitness under § 14–15–19(3)(b).

merous other pretrial motions and court appearances. A review of the record clearly reveals that King had notice of the factual allegations constituting the abandonment and unfitness grounds for terminating his parental rights including his miscellaneous sexually-related convictions, his attitude toward his "problem," his possible mental incapacities and illnesses, his failure to call his son, his failure to support his son, his failure to keep significant contact with his son, and his general ignorance regarding his son's emotional status and day-to-day activities and achievements. King's contention that he was not notified of the factual basis for terminating his parental rights under § 14–15–19(3) is unpersuasive in light of the revelations made during the numerous continuances and substantial discovery that occurred.

Similarly, King's contention that Thompson waived his right to assert that King's consent was not required for the adoption of Steven because of a failure by Thompson to plead particular facts and circumstances is incorrect. Once King's parental rights were terminated under § 14–15–19, N.D.C.C., his statutorily-required consent automatically disappeared and was no longer an issue in the adoption proceeding because it was not necessary. Section 14–15–06(1)(e), N.D.C.C.

Finally, King cites as error the admission into evidence of his court-martial record, entitled Post-Trial Review. At the adoption hearing, King objected to admission of the entire record because of its harmful prejudice, but on appeal King objects only to a portion of the Post-Trial Review as being prejudicial (a letter written by Doctor Matthew Levine). King claims that admission of the letter was prejudicial since he was not given adequate time to prepare for or rebut the substance of the court-martial record and the fact that he had no opportunity to cross-examine the writer or contents of the letter.

■ It appears from the record that the Post-Trial Review was proffered and admitted as a public record under Rule 1005, N.D.R.Ev. Dr. Levine's letter is a certified copy of this official record, authorized by the United States Army, which serves as the documentation upon which King bases his appeal. Although Dr. Levine's letter is prejudicial to King's position at the adoption hearing, any prejudice is significantly outweighed by the relevance and probative value of the letter. The record of the court-martial proceeding is very probative of King's fitness as a parent and it was appropriate for the court to admit the contents of the letter which were written on King's behalf, at the request of his defense counsel, in preparation of King's attempt to dismiss his court-martial convictions. The court properly admitted Dr. Levine's letter into evidence.

Accordingly, we affirm.

ERICKSTAD, C.J., and VANDE WALLE, LEVINE and MESCHKE, JJ., concur.