In the Matter of the Application for DIS-CIPLINARY ACTION AGAINST Don-ald R. BECKER, a Member of the Bar of the State of North Dakota.

DISCIPLINARY BOARD OF THE SUPREME COURT of the State of North Dakota, Petitioner,

v.

Donald R. BECKER, Respondent.

Civ. No. 920373.

Supreme Court of North Dakota.

Aug. 10, 1993.

Vivian E. Berg (argued), Disciplinary Counsel, Bismarck, for petitioner.

Donald R. Becker (argued), pro se.

MESCHKE, Justice.

The Disciplinary Board recommends a public reprimand of Donald R. Becker for negligently handling a client's property. Because there was little or no actual injury after prompt restitution, we direct a private reprimand of Becker.

Becker became a member of the North Dakota Bar in 1983. Beginning October 1988, he represented Dennis Mees on sever-al criminal charges. Mees paid Becker a $2,000 initial retainer, another $1,000 later, and $500 was due after sentencing. Around October 18, 1989, postal officials returned to Becker five pieces of Mees's gold jewelry, three rings and two bracelets, seized at the time of Mees's arrest. Mees asked Becker to deliver the jewelry to Mees's fiancee in Texas. Becker agreed to do so.

Around November 28, 1989, Becker told Mees that the jewelry had been stolen from the console inside Becker's car during the Thanksgiving holiday. Because it was doubtful that the jewelry could be recov-ered and, with the concurrence of Mees, to avoid further publicity before Mees's im-pending sentencing on criminal charges, Becker made no police report.

Because the loss was not covered by Becker's insurance, Becker agreed with Mees to forgo further payment for his work and to perform other legal services to offset the value of the jewelry. After con-siderable work, Becker discussed the con-tinuing representation in July 1990 with Mees, then in prison. According to Becker, it was understood that the additional work had exceeded the worth of the jewelry, and that the arrangement would end with the completion of a pending name-change peti-tion. In August 1990, Becker sent Mees a statement that itemized $6,421.78 in servic-es, transfers, and expenses for Mees.

Mees wrote back, accusing Becker of stealing the jewelry. Mees later made a disciplinary complaint that Becker stole the jewelry.

In February 1991, formal disciplinary proceedings were begun against Becker for violating NDRPC 1.15 by failing to safe-keep the property of a client. From a stipulation, disciplinary counsel summa-rized the evidence to a hearing panel. The panel concluded that, because "the jewelry was missing and therefore could not be valued by an independent third party, ... the lawyer's negligence ... caused injury or potential injury to a client." The panel recommended that Becker be publicly repri-manded and assessed costs of $350. The

Disciplinary Board unanimously adopted the panel's findings and submitted that recommendation to this court for disciplinary action.

Becker admits the violation and does not contest the costs, but he argues that, "because the value of services, money and goods provided Mees was in excess of the value of the jewelry," Mees suffered no "loss or potential loss." Therefore, Becker argues, a private reprimand is the correct sanction.

The relevant part of NDRPC 1.15 says:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be deposited in one or more identifiable interest bearing trust accounts.... Other property shall be identified as such and appropriately safeguarded.

Becker negligently failed to appropriately safeguard property that his client entrusted to him. That fact is undisputed, and the only question is what sanction applies.

This court adopted the North Dakota Standards for Imposing Lawyer Sanctions (NDSILS) in 1988 based on the American Bar Association's *Standards of Imposing Lawyer Sanctions* (February 1986). *See* NDCC Court Rules Annotated 1009 (1992–93). The purposes of the standards are "to promote: (1) consideration of all factors relevant to imposing the appropriate level of sanction in an individual case; (2) consideration of the appropriate weight of such fact[or]s in light of the stated goals of lawyer discipline; (3) consistency in the imposition of disciplinary sanctions for the same or similar offenses...." NDSILS 1.3. Those purposes aid us in selecting the appropriate sanction.

Either of two related standards could apply here. NDSILS 4.13 says:

Reprimand is generally appropriate when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client.

NDSILS 4.14 reads:

Admonition is generally appropriate when a lawyer is negligent in dealing with client property and causes little or no actual or potential injury to a client.

In the standards, "reprimand" means "public reprimand," while "admonition" denotes "private reprimand." NDSILS 2.4 and 2.5. The question here is the extent of the injury for selection of the correct sanction.

Ironically, this dispute about the correct sanction results in publicizing the sanction, even if we apply a private reprimand. *See Disciplinary Board v. Amundson*, 297 N.W.2d 433, 444 (N.D.1980) ("Private reprimands are issued by the Disciplinary Board, not this court, although we may review the decision of the Disciplinary Board to issue a private reprimand."). Still, the public airing has the wholesome aspect of informing other lawyers, thereby discouraging similar carelessness. The differential in our decision lies largely in the severity of the offense on this lawyer's record.

For sanction selection, an "injury" is

harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct. The level of injury can range from "serious" injury to "little or no" injury; a reference to "injury" alone indicates any level of injury greater than "little or no" injury.

....

"Potential injury" is the harm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct.

NDSILS Definitions at NDCC Court Rules Annotated 1010. Mees was clearly injured by Becker's carelessness in carrying a client's valuable property around in his car. In the end, however, little or no actual injury resulted to Mees after Becker's restitution via legal services.

Recognizing the lack of actual injury, disciplinary counsel urges that the controlling factor is the "potential injury" to the profession. Disciplinary counsel argues it this way: "Had Becker not left the jewelry in the console, there would not be the dispute over its value or the nagging question, reflecting so poorly on the profession, of whether it really was stolen."

Becker and Mees placed divergent values on the lost jewelry: $5,500 by Becker, and $8,840 by Mees. Becker testified that he impulsively obtained an appraisal by a local Fargo jeweler before the loss, speculating that he might be asked to accept the jewelry in lieu of fees. This appraisal "indicated that the retail value of the jewelry would be approximately $5,500.00 and a fair market value would be approximately ½ that amount." On the other hand, Mees's estimate came from a jeweler who sometimes appraised items sight unseen, and who had otherwise given Mees and his fiancee blank letterhead stationery "so that they could type up their own lists of jewelry and appraisals." With Mees's criminal record, disciplinary counsel concedes that Mees's appraisal has "little credibility."[1] The clearest and most convincing evidence, the appraisal by a local jeweler for Becker, is practically an independent appraisal. *See* NDPRLDD 3.5(C) (standard of proof is clear and convincing evidence). This local appraisal placed the value of the jewelry at under $5,500.

If a sentimental value existed, Mees might yet have an unreimbursed injury, even after restitution. It was stipulated, however, that "Mees at one time observed that he would just as soon have his cash as a nest egg and have fees paid by the lost jewelry." If the jewelry had more than a monetary value to Mees, he would not have been so agreeable to offsetting its loss for services and to delaying his complaint to the channels of discipline. No sentimental value affects our analysis.

Disciplinary counsel examined Becker's files to appraise the work done for Mees. The work included defending federal criminal proceedings, where Mees was convicted and sentenced for mail fraud, aiding and abetting, possession of firearms by a convicted felon, false oath, and failure to disclose; defending later state criminal charges, where Mees was convicted and sentenced for theft of property and bail jumping; resisting revocation of Mees's insurance license in Texas; resisting enforcement of a lien against the property of Mee's fiancee; and performing various other miscellaneous services, including resisting collection claims against Mees and his wife, assisting his wife and stepdaughter on some claims, presenting a name-change petition for Mees, and paying some shipping charges, as well as making some cash payments to, and purchases for, Mees in the amount of $523; all totaling $6,421.78.

Disciplinary counsel concedes that "the additional work done far exceeded what one might expect as incidental to represen-

**1.** Dennis Mees is well known to this court. *See State v. Mees,* 196 N.W.2d 399 (N.D.1972) (dismissing State's appeal from an order quashing nine drug charges of a ten-count grand jury indictment against Dennis Mees, leaving a perjury count standing); *State v. Mees,* 272 N.W.2d 61 (N.D.1978) (affirming denial of post-conviction relief from criminal charges of armed robbery, kidnapping, and aggravated assault); *Matter of Mees,* 465 N.W.2d 172 (N.D.1991) (reversing denial of a prisoner's petition for change of name).

Charlotte Skjonsby Mees, his wife then and a witness interviewed for this proceeding, is also known to this court from her unusual role in a series of cases. *See State v. Skjonsby,* 319 N.W.2d 764 (N.D.1982) (affirming Richard Skjonsby's conviction of attempted murder of Charlotte Skjonsby in the bathroom of a mur-

dered man's motel room); *State v. Skjonsby,* 338 N.W.2d 628 (N.D.1983) (reversing summary dismissal of Richard Skjonsby's application for post-conviction relief from his convictions of the murder of the man and the attempted murder of Charlotte); *Application of Kraemer,* 411 N.W.2d 71 (N.D.1987) (disbarment of one of the attorneys who had represented Richard Skjonsby); *State v. Skjonsby,* 417 N.W.2d 818 (N.D. 1987) (denial of post-conviction relief to Richard Skjonsby on his convictions of murder of the man and the attempted murder of Charlotte). According to 417 N.W.2d at 823, Kraemer was "romantically involved with Charlotte Skjonsby, whom Richard Skjonsby considered to be his common-law wife, and was representing Charlotte in a tort action against the Biltmore Hotel, where the shooting had occurred."

tation in criminal proceedings for a flat fee, ...'" and that the amounts charged by Becker were reasonable. Thus, Becker's legal work adequately compensated for the lost jewelry.

Uncharacteristically, the hearing panel and Disciplinary Board did not address aggravating and mitigating circumstances, as NDPRLDD 3.1(F) requires: "Mitigating or aggravating circumstances which affect the nature or degree of discipline to be imposed in a matter shall be fully set forth in its report." Disciplinary counsel urges that "it is plain" that Becker's earlier disbarment in 1977 by the Supreme Court of Arizona "is entitled to weight in aggravation" under NDSILS 9.22(a). We disagree.

Arizona disbarred Becker for a completely unrelated type of offense. Disciplinary counsel concedes that her investigation confirms Becker's full disclosure and the extensive investigation that was made when he applied for admission in North Dakota. He was admitted to practice in this state, and has not been disciplined here. In fact, another gold watch and some tools were later returned by postal officials to Becker, safeguarded by him, and delivered for Mees. No pattern of misconduct is present. Becker's remote conduct does not aggravate this unintentional violation.

"The least culpable mental state is negligence, when a lawyer fails to be aware of a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation." Prefatory material to the current *Model Standards For Imposing Lawyer Sanctions*, ABA/BNA Lawyers' Manual on Professional Conduct at 01:805–806 (Published by the American Bar Association and the Bureau of National Affairs; 6–17–92). Under NDSILS 9.32(d), mitigating factors include "timely good faith effort to make restitution or to rectify consequences of misconduct." While services, rather than money, are not ordinarily an acceptable form of restitution, it was agreed upon in this case. Here, coming after completion of agreed restitution, the

lateness of the complaint lessens its impact.

Becker readily made restitution before Mees complained to disciplinary authorities.

Lawyers who make restitution voluntarily and on their own initiative demonstrate both a recognition of their ethical violation and their responsibility to the injured client.... Such conduct should be considered as mitigation....

*Model Standards For Imposing Lawyer Sanctions* 9.4, Commentary, ABA/BNA Lawyers' Manual on Professional Conduct at 01:841. *See also Matter of Walton*, 251 N.W.2d 762 (N.D.1977) (prompt restitution is an important mitigating factor). By promptly acknowledging his carelessness, readily making restitution, and fully cooperating in the disciplinary process, Becker has rectified his negligence and compensated for the injury.

Accordingly, we conclude that Mees suffered little or no actual injury, and that there is no practical injury to the profession. We order that Donald R. Becker be privately reprimanded, and that he pay costs of $350.

VANDE WALLE, C.J., and LEVINE and SANDSTROM, JJ., concur.

NEUMANN, Justice, concurring in result.

I concur in the result. My only concern is that the Court's opinion seems to suggest Becker's restitution eliminates both the actual and the potential injury to his client, and thereby changes this from a NDSILS 4.13 case, requiring public reprimand, to a NDSILS 4.14 case, requiring only a private admonition. I believe the definition of potential injury in the NDSILS makes it clear that potential injury is harm that is reasonably foreseeable *at the time of the lawyer's misconduct.* (Emphasis added.) The effect of Becker's later restitution, therefore, cannot be to eliminate the potential harm, which was determined at the time of the misconduct. Rather, the effect must be a subsequent mitigation of the negligent misconduct itself. I see this as a case in which Becker's negligence in

dealing with his client's property caused potential injury, and therefore justifies public reprimand under NDSILS 4.13, while his restitution is a factor which justifies a reduction in the degree of discipline to be imposed, pursuant to NDSILS 9.32(d). The restitution does not eliminate the potential harm, and thus somehow turn this into a NDSILS 4.14 case.

While my argument may appear to be a niggling distinction without a difference in the present case, I fear that a less rigorous analysis and application of our standards in this case may return to haunt us in subsequent cases in which the facts may be more complex, and the resulting sanction less appropriate.