2005 ND 153

**In the Matter of the Application for DISCIPLINARY ACTION AGAINST Michael R. HOFFMAN, a Member of the Bar of the State of North Dakota.**

**Disciplinary Board of the Supreme Court of North Dakota, Petitioner**

v.

**Michael R. Hoffman, Respondent.**

No. 20040379.

Supreme Court of North Dakota.

Aug. 23, 2005.

Paul W. Jacobson, Disciplinary Counsel, Bismarck, ND, for petitioner.

Irvin B. Nodland, PC, Bismarck, ND, for respondent.

### DISMISSED

PER CURIAM.

[¶ 1] Michael R. Hoffman filed objections to the hearing panel's recommendation that he be reprimanded and required to pay costs of the disciplinary proceeding for violation of N.D.R. Prof. Conduct 1.1, competence, and N.D.R. Prof. Conduct 1.3, diligence. We conclude there is not clear and convincing evidence of a violation and decline to adopt the hearing panel's recommendation. We dismiss.

### I.

[¶ 2] Hoffman was retained by Mark Steinbach in October 1997 to represent Steinbach in the appeal of his murder conviction. The appellate brief had already been filed by Steinbach's previous attorney. Hoffman moved this Court for an opportunity to supplement the brief. This Court denied his motion. Steinbach's con-

viction was affirmed on January 21, 1998. *State v. Steinbach*, 1998 ND 18, 575 N.W.2d 193. The mandate was issued on February 12, 1998.

[¶ 3] Hoffman filed for post-conviction relief in state court in May 1999 to raise issues not addressed in Steinbach's appeal to this Court. Filing a post-conviction relief petition in state court tolls the time to file for federal habeas corpus relief if the state court filing is made within one year and ninety days of the order affirming the state court conviction. Hoffman thought the date to commence the limitations period was the date this Court issued its mandate to the district court, giving him until May 13, 1999, to file for post-conviction relief. The United States District Court found the commencement date is the date the opinion of this Court is filed, meaning Hoffman needed to file the petition before April 21, 1999.

[¶ 4] There is no question Hoffman incorrectly calculated the filing date that would toll the time to file for federal habeas corpus relief. A case becomes final when "the judgment of conviction [has been] rendered, the availability of appeal exhausted, and the time for petition for certiorari ha[s] elapsed." *Teague v. Lane*, 489 U.S. 288, 295, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (quoting *Linkletter v. Walker*, 381 U.S. 618, 622 n. 5, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965)). Rule 13 of the Supreme Court Rules states:

> The time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate (or its equivalent under local practice). But if a petition for rehearing is timely filed in the lower court by any party, or if the lower court appropriately entertains an untimely petition for rehearing or *sua sponte* considers rehearing, the time to file the petition for a writ of certiorari for all parties (whether or not they requested rehearing or joined in the petition for rehearing) runs from the date of the denial of rehearing or, if rehearing is granted, the subsequent entry of judgment.

[¶ 5] Another attorney was representing Steinbach when the application for state post-conviction relief was dismissed without prejudice in April 2002. A second application was also dismissed later that year. This Court affirmed the second dismissal in *Steinbach v. State*, 2003 ND 46, 658 N.W.2d 355. Steinbach filed for federal habeas corpus relief with the United States District Court for the District of North Dakota in April 2003. The petition was dismissed with prejudice because it had not been timely filed. The Eighth Circuit Court of Appeals affirmed the dismissal, and there is currently no action pending in federal court.

[¶ 6] After a hearing, the hearing panel found Hoffman violated N.D.R. Prof. Conduct 1.1, which states "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation," and N.D.R. Prof. Conduct 1.3, which states "[a] lawyer shall act with reasonable diligence and promptness in representing a client." Hoffman had been privately admonished by the Inquiry Committee West for violating N.D.R. Prof. Conduct 1.15 and N.D.R. Prof. Conduct 1.4(A) in the same representation of Steinbach, and the hearing panel considered this and Hoffman's "substantial experience in the practice of law" as aggravating factors that, when combined with his acts of negligence, warranted discipline. The panel also considered mitigating factors, including: Hoffman had a good reputation within the legal community and no record

of prior discipline, he did not act with selfish intent, he cooperated with the disciplinary board, and he appeared remorseful. The panel recommended Hoffman be reprimanded and required to pay the costs of the disciplinary proceedings. Hoffman filed objections with this Court.

## II.

[¶ 7] This Court reviews disciplinary proceedings "de novo on the record." *Disciplinary Board v. McKechnie*, 2003 ND 170, ¶ 7, 670 N.W.2d 864. Due weight is given to "the findings, conclusions, and recommendations of the hearing panel," but this Court does not act as a "rubber stamp." *Id.* Disciplinary counsel must prove each alleged violation by clear and convincing evidence. *Id.* A disciplinary case is considered on its own facts to determine what discipline is needed. *Id.*

[¶ 8] "Disciplinary proceedings differ significantly, both procedurally and substantively, from civil legal malpractice actions." *Disciplinary Board v. McKechnie*, 2003 ND 22, ¶ 16, 656 N.W.2d 661. "[T]he rules of professional conduct set a minimum level of conduct with the consequence of disciplinary action." *Id.* (citing *Matter of Disciplinary Action Against Jaynes*, 267 N.W.2d 782, 784 (N.D.1978) ("stating the 'fact that an injured party may recover from a lawyer in a malpractice action is in itself not sufficient to maintain the necessary high standard' " to demonstrate a disciplinary offense)).

[¶ 9] This Court has previously expressed concern over disciplining an attorney for a single occasion of negligence. *McKechnie*, 2003 ND 22, ¶ 23, 656 N.W.2d 661. In *McKechnie*, we stated:

> We note the California Supreme Court's concern over "the problems inherent in using disciplinary proceedings to punish attorneys for negligence, mistakes in judgment, or lack of experience

or legal knowledge." *Lewis v. State Bar of California*, 28 Cal.3d 683, 170 Cal. Rptr. 634, 621 P.2d 258, 261 (1981). We share that concern. In C. Wolfram, *Modern Legal Ethics* § 5.1, at p. 190 (1986) (footnotes omitted), the author states:

> To date, the enforcement of competence standards has been generally limited to relatively exotic, blatant, or repeated cases of lawyer bungling. Lawyers who make some showing of effort, and who do nothing other than perform badly, rarely appear in the appellate reports in discipline cases. The lawyers who are disciplined for incompetence have usually aggravated their situation. For example, several cases involve lawyers who, after their incompetent work, concocted elaborate schemes or lies to deceive a client whose case was mishandled. Most decisions and official ABA policy insist that a single instance of "ordinary negligence" is usually not a disciplinary violation, although some decisions hold a lawyer to a standard of ordinary care that is similar to that required in malpractice cases ... or discipline a lawyer for a single instance of neglect. Consistent with that position, courts will discipline lawyers when the neglect is accompanied by some other violation, as an impermissible conflict of interest, or when the acts of negligence are repeated.

We agree with the observation of the Arizona Supreme Court in *Matter of Curtis*, 184 Ariz. 256, 908 P.2d 472, 477–78 (1995) (footnote omitted):

> Neither failure to achieve a successful result nor mere negligence in the handling of a case will necessarily constitute an ER 1.1 violation. We recognize the important distinction between conduct by an attorney that is simply

negligent and conduct that rises to the level of an ethical violation. Clearly, the Bar must be vigilant in guarding the rights of clients, "but care should be taken to avoid the use of disciplinary action ... as a substitute for what is essentially a malpractice action." *See In re Myers,* 164 Ariz. 558, 561 n. 3, 795 P.2d 201, 204 n. 3 (1990) (citations and internal quotations omitted); *see also In re Mulhall,* 159 Ariz. 528, 531, 768 P.2d 1173, 1176 (1989) (noting that negligently allowing a statute of limitations to run does not constitute an ethical violation). Thus, although not every negligent act violates an ethical rule, neglect in investigating the facts and law necessary to present a client's claim crosses the fine line between simple neglect and conduct warranting discipline.

*See also The Florida Bar v. Neale,* 384 So.2d 1264, 1265 (Fla.1980) (stating the "rights of clients should be zealously guarded by the bar, but care should be taken to avoid the use of disciplinary action ... as a substitute for what is essentially a malpractice action"); *In re Complaint as to Conduct of Gygi,* 273 Or. 443, 541 P.2d 1392, 1396 (1975) (stating "we are not prepared to hold that isolated instances of ordinary negligence are alone sufficient to warrant disciplinary action"); *Committee on Legal Ethics v. Mullins,* 159 W.Va. 647, 226 S.E.2d 427, 430 (1976) (stating "[c]harges of isolated errors of judgment or malpractice in the ordinary sense of negligence would normally not justify the intervention of the ethics committee"), *overruled on other grounds, Committee on Legal Ethics v. Cometti,* 189 W.Va. 262, 430 S.E.2d 320, 330 (1993); 1 R. Mallen and J. Smith, *Legal Malpractice* § 1.9, at p. 45(5th ed.2000) (stating

"[o]rdinary negligence should not warrant discipline").
*McKechnie,* at ¶¶ 23–24.

■ [¶ 10] McKechnie mis-informed his client about the statute of limitations and the client's case was dismissed for failure to file within the limitations period. *McKechnie,* 2003 ND 22, ¶¶ 2–3, 5, 656 N.W.2d 661. The hearing panel found McKechnie violated N.D.R. Prof. Conduct 1.1 and recommended a 30–day suspension. *Id.* at ¶ 6. This Court found McKechnie's actions were "nothing more than an isolated instance of ordinary negligence, or error of judgment" and concluded he did not violate N.D.R. Prof. Conduct 1.1. *Id.* at ¶ 26.

[¶ 11] McKechnie's actions were distinguished from the actions of the attorney in *Disciplinary Board v. Nassif,* 504 N.W.2d 311 (N.D.1993). Nassif had allowed a statute of limitations to expire, but he also "was 'oblivious[] to the statute of limitation,' was unaware of the date of the client's injury, failed to communicate with the client, and when the client sought to change representation for her claim, the lawyer told her 'he was still entitled to "my share of the money," ' and would continue to handle her claim." *McKechnie,* at ¶ 25 (quoting *Nassif,* at 312, 315). Nassif was publicly reprimanded and ordered to pass the Multistate Professional Responsibility Examination and pay costs. *Nassif,* at 312.

[¶ 12] The record contains deposition testimony of Mark Steinbach. Deposition exhibit 1 is a letter Steinbach sent Hoffman, dated March 31, 1999. The letter states, in pertinent part:

When I talked to you today I forgot to express my concern over my ability to file a writ of habeas corpus in the U.S. District Court.

I was recently made aware of the fact that I only have one (1) year in which to

file my writ of habeas corpus, due to the anti-terrorism act of 1996.

*Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) determined that direct review ends "where the judgement of conviction was rendered, the availability of appeal is exhausted and the time for petition for cert. had elapsed." *Teague* 489 U.S., at 295.

It appears that the *Teague* decision adds the ninety (90) day period to petition for cert., making the time to file habeas in Federal District Court one year and ninety (90) days.

On April 21, 1999, my year and ninety (90) days is up, I am giving you a direct order to file my Post–Conviction Relief, No later than Monday April 5, 1999, I am a paying client, the facts are clear if my time is not already up it will be, as you know, you can amend a PCR, but it must be filed so I have time to do a writ of habeas corpus if needed.

Steinbach testified the letter was mailed April 1, 1999.

[¶ 13]  Steinbach further testified:

Q.  After sending out that letter on March 31st, did you have any further discussions with Mr. Hoffman relating to—well, the substance of this letter relating to the post-conviction relief and Federal habeas corpus?

A.  Yes. After that letter, yes, we did, and his—he said he was aware of the ruling.  He—first he said he would have it done on time.  It was getting closer to the 21st, it wasn't going to get done, and he said there are ways around the rule, and he came to visit me. . . .  He also at the time said, Well, your calculation was wrong because it was the—it should be—it should go until February 12th when it was filed with District Court, and so that would mean he had until May 12th to file it.

Q.  Okay. When you say "it was filed with District Court"—

A.  The—when your Supreme Court case is affirmed or if it's reversed or whatever, the judgment has to be sent back and filed with the District Court. That was done on February 12th of '98.

Q.  Okay. And this discussion concerning what you just talked about, you said that occurred here?

A.  Yes. It was in the old visiting room.

Q.  And that would have been when?

A.  It was before the 21st.

Q.  Of April?

A.  Of April, yes.

. . .

Q.  Okay. Did you talk to Mr. Hoffman again after that meeting here that we just talked about prior to April 21st of 1999?

A.  No. Because then, you know, I—I—you know, I just took it that he knew what he was doing because he said, Well, the 21st isn't the date.  It just has to be in before the 12th, because the day it was filed, that's when it was finalized.

Q.  Okay. Did you talk to him then again before the 12th of May?

A.  Yes. I called a few days before the 12th and just—is it ready to go?  He says, Yes, I'll have it filed on time.

Q.  And then it was filed; correct?

A.  No. Yeah, but it was still filed a day late.

Q.  Okay. It was filed the 13th of May; correct?

A.  Well, it was dated the 12th.  He mailed it, but it didn't arrive at the Court until the 13th.

. . .

Q.  Okay. Now you have told us that Mr. Hoffman mentioned to you that the time that started the running for this

habeas corpus time period, as he understood it, it started to run from not the filing of the opinion but the later date—

A. The day it was filed.

Q. —May 12th or 13th, and then we've talked about May 13th has come and gone and you've talked to Mr. Hoffman. At some time did you become aware that there might be a problem with calculating the start of the Federal habeas corpus time limit after May 12th or May 13th?

A. No. Actually, I didn't—I didn't see—the only problem I had with the whole thing is when after I had dismissed Mr. Hoffman and I hired Steven Light.

[¶ 14] Steinbach's letter clearly communicated to Hoffman concern with the timing of an application for post-conviction relief. The subsequent discussion between Hoffman and Steinbach, as evidenced by Steinbach's deposition testimony, indicates Hoffman was operating under a misapprehension of 28 U.S.C. § 2244(d)(1), which states:

A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

Hoffman's failure to read § 2244 in light of *Teague v. Lane*, 489 U.S. 288, 295, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and Supreme Court Rule 13 was negligent. The record shows Steinbach was aware of Hoffman's plan for filing the petition for post-conviction relief. Hoffman's calculation, while incorrect, was communicated to, and understood by, his client.

[¶ 15] Hoffman's actions did not rise to the same egregious level as Nassif's but were more like McKechnie's, "nothing more than an isolated instance of ordinary negligence, or error of judgment." *McKechnie*, 2003 ND 22, ¶ 26, 656 N.W.2d 661. Hoffman has been licensed to practice law in North Dakota since 1986 and has never been disciplined by this Court for violating the Rules of Professional Conduct.

[¶ 16] The hearing panel's recommendation was based, at least in part, on Hoffman's private admonition for violating N.D.R. Prof. Conduct 1.15, safekeeping property, and N.D.R. Prof. Conduct 1.4, communication. The record does not contain details about these alleged violations, and we note they stemmed from the same representation of Steinbach and do not establish a history of rule violations by Hoffman. *See McKechnie*, 2003 ND 22, 656 N.W.2d 661 (attorney found to have violated N.D.R. Prof. Conduct 1.4(b) but not N.D.R. Prof. Conduct 1.1 in the same representation).

[¶ 17] The lack of detail about the admonitions is troubling because a single instance of negligence coupled with other egregious conduct can be the basis for discipline. *See Nassif*, 504 N.W.2d 311 (attorney's "obliviousness to the statute of limitation," combined with failure to communicate with client, failure to maintain an adequate file, and effort to force a continued representation sufficiently egregious for discipline). What the record reflects is the letter of admonition which does not detail the basis for the admonition. The letter of admonition does indicate the complaint was filed by John Steinbach, the father of Hoffman's client, Mark Steinbach. The record also contains three letters written by John Steinbach, some of which referred to Hoffman's representation of his son and some of which pertained to other attorneys. Disciplinary

counsel indicated Hoffman had no separate representation of John Steinbach so, although it implied that the letters relate to the admonition, it is unclear how the letters relate to the admonition issued by the inquiry committee. It is also unclear how the facts giving rise to the admonition relate to the erroneous negligent advice Hoffman gave to his client since it is clear from Mark Steinbach's deposition testimony that Hoffman was communicating with his client at the time he failed to meet the deadline. The record does not demonstrate clear and convincing evidence of egregious conduct that, coupled with negligence, would warrant disciplinary action.

## III.

[¶ 18]  We decline to adopt the recommendation of the hearing panel and dismiss the petition for discipline.

[¶ 19] GERALD W. VANDE WALLE, C.J., JOHN C. IRBY, D.J., CAROL RONNING KAPSNER and DALE V. SANDSTROM, JJ., concur.

[¶ 20] The Honorable JOHN C. IRBY, D.J., sitting in place of MARING, J., disqualified.

[¶ 21] The Honorable DANIEL J. CROTHERS did not participate in this decision.