2012 ND 174

In the Matter of the Application for DISCIPLINARY ACTION AGAINST Cynthia M. FELAND, a Member of the Bar of the State of North Dakota.

Disciplinary Board of the Supreme Court of the State of North Dakota, Petitioner,

v.

Cynthia M. Feland, Respondent.

No. 20110321.

Supreme Court of North Dakota.

Aug. 20, 2012.

Paul W. Jacobson, Disciplinary Counsel, Bismarck, N.D., for petitioner.

Ronald F. Fischer, Grand Forks, N.D., for respondent.

Aaron G. Birst, Executive Director, North Dakota Association of Counties, Bismarck, N.D., for amicus curiae North Dakota State's Attorneys Association.

Lynn C. Jordheim, First Assistant United States Attorney, Office of United States Attorney, Fargo, N.D., for amicus curiae United States.

PER CURIAM.

[¶ 1] Cynthia Feland and Disciplinary Counsel object to a report of a hearing panel of the Disciplinary Board that concluded Feland had violated N.D.R. Prof. Conduct 3.8(d). The hearing panel recommended Feland be suspended from the practice of law for 60 days and ordered to pay costs of the disciplinary proceeding in the amount of $11,272.21. We conclude there is clear and convincing evidence Feland violated N.D.R. Prof. Conduct 3.8(d), and we order that she be admonished and that she pay partial costs of the disciplinary proceeding in the amount of $5,636.10.

I

[¶ 2] While employed as a Burleigh County Assistant State's Attorney, Feland prosecuted Charles Blunt, the executive director of North Dakota Workforce Safety and Insurance ("WSI"), for misapplication of entrusted property. *See State v. Blunt*, 2011 ND 127, 799 N.W.2d 363 *("Blunt III")*; *State v. Blunt*, 2010 ND 144, 785 N.W.2d 909 *("Blunt II")*; *State v. Blunt*, 2008 ND 135, 751 N.W.2d 692 *("Blunt I")*. One of the issues presented in the criminal trial was whether Blunt should have sought recoupment of relocation expenses WSI had paid to WSI executive Dave Spencer. Under the terms of Spencer's employment agreement, WSI agreed to pay his relocation expenses when he took the job, but Spencer was required to repay half of the expenses if he voluntarily resigned within the first two years. *See Blunt III*, at ¶ 3. Spencer left employment with WSI within two years, but Blunt did not seek recoupment of the relocation expenses.

[¶ 3] In 2006, the State Auditor's Office conducted a performance audit of WSI. *Id.* at ¶ 2. During the course of the audit, the issue of recoupment of Spencer's relocation expenses was raised. Blunt originally told the auditors only that Spencer had resigned and said WSI would not seek reimbursement because the provision in the letter requiring reimbursement should not have been in the letter. When the auditors suggested WSI should pursue recoupment of relocation expenses, Blunt told them Spencer had been forced to resign and his departure was not voluntary. The auditors therefore did not include a recommendation to recoup the relocation expenses in their final report. *See id.* at ¶ 15.

[¶ 4] During the investigation and prosecution of Blunt's criminal case, Feland requested that Jason Wahl, an auditor from the State Auditor's Office, provide a written memo summarizing the auditors' investigation regarding the Spencer relocation expenses. In a November 8, 2007, memo ("the Wahl memo"), Wahl outlined the various meetings and discussions he had with WSI executives, including Blunt,

about Spencer's relocation expenses. *See id.* at ¶ 13. We summarized the contents of the Wahl memo in *Blunt III,* at ¶ 15:

> The Wahl memo is dated November 8, 2007, and contained information about Spencer's resignation, including why the auditors began questioning whether WSI should seek repayment of Spencer's relocation expenses and why they decided not to make a recommendation about the expenses. The memo states Blunt was not forthcoming with information about Spencer's decision to leave his position at WSI, the auditors were initially informed Spencer "resigned," and they began to question whether Spencer was required to repay the relocation expenses, but Blunt later provided new information about Spencer's decision to leave and made it appear the decision was not voluntary. The memo states, "Due to the new information provided by Mr. Blunt, we determined, in consultation with a representative of the Attorney General's Office, there was not a voluntary resignation so it was determined to drop the recommendation we had drafted."

[¶ 5] At Blunt's criminal trial, one of the State's numerous allegations of misapplication of entrusted property was Blunt's failure to seek recoupment of relocation expenses from Spencer. *Id.* at ¶ 3. Wahl testified at the criminal trial about Blunt's refusal to seek recoupment of the relocation expenses. A jury convicted Blunt on one of two counts of misapplication of entrusted property, and this Court affirmed on direct appeal. *See Blunt II,* 2010 ND 144, ¶ 40, 785 N.W.2d 909.

[¶ 6] Blunt subsequently moved for a new trial, alleging the State had violated N.D.R.Crim.P. 16 by failing to disclose certain documents, including the Wahl memo, during discovery. *Blunt III,* 2011 ND 127, ¶ 5, 799 N.W.2d 363. On appeal from a district court order denying Blunt's motion for a new trial, this Court concluded that, "[a]lthough for the purposes of this opinion" the State had "likely violated N.D.R.Crim.P. 16 by failing to disclose the requested documents," Blunt had failed to show he was prejudiced by the violation. *Id.* at ¶¶ 13–14. Noting that Blunt and his attorney had possession of other documents which contained the same information as the Wahl memo, that Blunt presented other direct evidence that Spencer's termination was not voluntary, and that the State's Attorney had an "open file" policy, this Court concluded the district court had not erred in denying Blunt's motion for a new trial. *See id.* at ¶¶ 18–21.

[¶ 7] In August 2010, a petition for discipline was brought against Feland alleging she had violated N.D.R. Prof. Conduct 3.8(d) by failing to provide the Wahl memo to Blunt's defense counsel, Michael Hoffman. A hearing panel was appointed, and at the evidentiary hearing the panel heard conflicting evidence regarding whether Feland had provided the Wahl memo to Hoffman in discovery. Feland testified the Wahl memo was included in a stack of documents she gave to her legal assistant, Kim Bless, to copy and send to Hoffman. Bless testified she sent the documents to Hoffman and believed a copy of the Wahl memo was included, but she did not "know for certain" that it was. The Wahl memo was not listed on any of the discovery checklists created by the State's Attorney's Office in the Blunt file, which enumerated items that had been provided to the defense in discovery. Hoffman testified he did not receive the Wahl memo in discovery before trial.

[¶ 8] The hearing panel found Feland had violated N.D.R. Prof. Conduct 3.8(d) by failing to disclose the Wahl memo, which would have assisted in Blunt's defense of the case. The hearing panel rec-

ommended that Feland be suspended from the practice of law for 60 days and ordered to pay the costs of the disciplinary proceeding in the amount of $11,272.21.

[¶ 9] The hearing panel had jurisdiction under N.D.R. Lawyer Discipl. 3.1(E). Feland and Disciplinary Counsel filed timely objections to the hearing panel's report under N.D.R. Lawyer Discipl. 3.1(F). This Court has jurisdiction under N.D. Const. art. VI, § 3, N.D.C.C. § 27-14-01, and N.D.R. Lawyer Discipl. 3.1(F).

## II

[¶ 10] We recently summarized our standard of review in disciplinary proceedings:

We review the record in a disciplinary proceeding de novo. Although due weight is accorded to the hearing panel's findings, conclusions, and recommendations, we do not automatically accept the hearing panel's decision. Disciplinary Counsel must prove, by clear and convincing evidence, each alleged violation of the disciplinary rules. In determining what discipline, if any, is warranted, each disciplinary case must be considered upon its own facts.

*Disciplinary Board v. Summers*, 2012 ND 116, ¶ 7, 817 N.W.2d 363 (citations omitted).

## III

[¶ 11] The petition for discipline alleges Feland's conduct violated N.D.R. Prof. Conduct 3.8(d), which provides that a prosecutor in a criminal case shall:

disclose to the defense at the earliest practical time all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to

the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal. . . .

Feland raises numerous challenges to the hearing panel's findings and conclusions that her conduct violated Rule 3.8(d).

### A

[¶ 12] Feland contends the result recommended by the hearing panel conflicts with this Court's opinion in *Blunt III*. Feland argues:

Contrary to this Court's opinion in the underlying case, *State v. Blunt*, 2011 ND 127, 799 N.W.2d 363 the PANEL choose [sic] to create unworkable confusion with its findings and conclusions. This Court has ruled on the facts of this case and found that Blunt had all pertinent information through the discovery process. *Id.* In doing so, this Court has upheld the jury verdict and has denied a request for a new trial. *Id.*

Despite that, the PANEL created a situation where they seek to have a prosecutor suspended under facts the Court has found don't warrant a new trial. More pointedly, apparently the PANEL believes that the state of the law should be such that a criminal defendant is not entitled to a new trial even if the conduct of a prosecutor is so egregious that it warrants suspension. This contradiction makes no sense. Yet, that is the absurd result reached by the PANEL when it chose to read Rule 3.8(d) NDRPC in a wholly separate way from the well established discovery doctrines found in Rule 16 NDCrimP and *Brady*, and in the Rule 3.8(d) caselaw from other states. The petitioner now seeks to have this Court instill this arbitrary and unworkable system into North Dakota caselaw by asking the Court to uphold the PANEL'S actions.

. . . .

Feland urges the Court to disregard the PANEL'S attempt to make new uncharted law, and continue to adhere to discovery doctrines that this and other court's [sic] have established decades ago. Rule 16 NDCrimP, *Brady,* and Rule 3.8 NDRPC have to be read as working together, and not independently, to avoid the bipolar result the petitioner seeks.

[¶ 13] To the extent Feland's argument suggests that the proscriptions of Rule 3.8(d) must be read as coextensive with the limits imposed by N.D.R.Crim.P. 16 and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny, it ignores the fundamentally differing purposes of the underlying criminal action and the disciplinary proceeding. When a violation of Rule 16 or *Brady* is alleged in the criminal action, the focus is upon the effect of the violation on the defendant's right to due process and a fair trial, and judicial relief is warranted only when the defendant has been significantly prejudiced by denial of a substantial right, *see State v. Addai,* 2010 ND 29, ¶ 42, 778 N.W.2d 555 (under N.D.R.Crim.P. 16), or "when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Smith v. Cain,* —— U.S. ——, ——, 132 S.Ct. 627, 630, 181 L.Ed.2d 571 (2012) (quoting *Cone v. Bell,* 556 U.S. 449, 470, 129 S.Ct. 1769, 173 L.Ed.2d 701 (2009)) (under *Brady* ). The focus of the disciplinary proceeding; however, is upon the conduct of the prosecutor and the protection of the public in general. *See* N.D. Stds. Imposing Lawyer Sanctions 1.1. The primary concern in disciplinary proceedings is to ensure attorneys act in conformity with the ethical standards embodied in the Rules of Professional Conduct, regardless of the surrounding circumstances. While the potential prejudice to the defendant may affect the severity of the sanction imposed, it should not affect the initial determination whether there has been a violation. A prosecutor's failure to comply with the duties imposed by Rule 3.8(d) should not be excused merely because, based upon the other evidence presented at trial, the result in the case would have been the same. A prosecutor's ethical duty to disclose all exculpatory evidence to the defense does not vary depending upon the strength of the other evidence in the case.

[¶ 14] Accordingly, it has been recognized that a prosecutor's ethical obligation of disclosure under Rule 3.8(d) is broader than the duties imposed by *Brady* and Rule 16. *See, e.g., Kyles v. Whitley,* 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); 2 Geoffrey C. Hazard, Jr., & W. William Hodes, *The Law of Lawyering* § 34.6 (3d ed.2012); Richard A. Rosen, *Disciplinary Sanctions Against Prosecutors for Brady Violations: A Paper Tiger,* 65 N.C.L.Rev. 693, 714 (1987); Christina Parajon, Comment, *Discovery Audits: Model Rule 3.8(d) and the Prosecutor's Duty to Disclose,* 119 Yale L.J. 1339, 1342–43 (2010); ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 09–454 (2009). We further note that the plain language of Rule 3.8(d) does not impose a materiality element similar to that applied under *Brady* and Rule 16. We therefore conclude that a prosecutor's ethical obligation to disclose evidence under Rule 3.8(d) is broader than the duty under *Brady* or Rule 16, and our refusal to grant a new trial in *Blunt III* does not preclude this disciplinary proceeding against Feland for failure to disclose the Wahl memo.

B

[¶ 15] Feland contends that, to establish a violation of Rule 3.8(d), Disciplinary

Counsel must prove by clear and convincing evidence a prosecutor intentionally withheld potentially exculpatory evidence. Feland therefore requests that we read a mens rea element into the rule so that only an intentional failure to disclose is proscribed. Disciplinary Counsel argues Rule 3.8(d) is not limited to intentional acts but also applies to conduct committed knowingly or negligently.

[¶ 16] This presents an issue of first impression in this state. In addition, although Rule 3.8(d) was adopted from the Model Rules of Professional Conduct, *see* *Disciplinary Board v. Dyer*, 2012 ND 118, ¶ 21, 817 N.W.2d 351, there is a dearth of caselaw in other jurisdictions directly addressing whether Rule 3.8(d) is violated only by an intentional withholding of evidence, or whether some lower level of culpability will suffice.

[¶ 17] The only case cited by the parties that provides significant analysis of the issue is *In re Attorney C*, 47 P.3d 1167 (Colo.2002). In *Attorney C*, disciplinary proceedings were commenced against a prosecutor who had on two occasions withheld exculpatory evidence from the defense until after the preliminary hearings were completed. A hearing board concluded the first violation had been committed negligently and the second violation had been committed knowingly. *Id.* at 1173. The Colorado Supreme Court, after first concluding the exculpatory evidence should have been disclosed before the preliminary hearings had been held, addressed whether Rule 3.8(d) applies only when a prosecutor intentionally fails to disclose evidence. The court noted that discovery violations in criminal cases are routinely handled by trial courts through appropriate orders and sanctions, and the court did not "wish to upset that process nor to interject regulatory counsel into it." *Attorney C*, at 1174. The court continued:

Because we do not wish to interfere with the discretion of trial courts to handle discovery disputes in the way dictated by the facts of the case, and because we do not wish the possibility of a grievance proceeding to permeate every discovery dispute in criminal cases, we choose to read the rule itself as including the mens rea of intent.

*Id.* Finding that the rule should apply only when the prosecutor's conduct "cannot be fully addressed by orders relating to the underlying case," the court held "grievance proceedings should be limited to those circumstances in which a prosecutor intentionally withholds exculpatory evidence in violation of the rule." *Id.*

[¶ 18] By contrast, the court in *In re Jordan*, 913 So.2d 775, 783 (La.2005), concluded Rule 3.8(d) does not incorporate a mental element and could be violated by conduct that was not intentional. Noting that its rule outlining proper factors to consider in imposing discipline allowed the court to consider whether the conduct had been committed intentionally, knowingly, or negligently, the court found the prosecutor had "knowingly" withheld exculpatory evidence in violation of Rule 3.8(d), which warranted a deferred three-month suspension. *Jordan*, at 784; *see also Lawyer Disciplinary Bd. v. Hatcher*, 199 W.Va. 227, 483 S.E.2d 810, 818 (1997) (although not directly addressing whether there is an intent requirement under Rule 3.8(d), the court noted that a prosecutor who "knowingly" fails to disclose all exculpatory evidence "runs the risk of violating ... Rule 3.8"); Hans P. Sinha, *The Discipline of Prosecutors: Should Intent Be a Requirement?*, 10 Engage: J. Federalist Soc'y Prac. Groups 102, 103–04 (2009) (noting the lack of an intent requirement in Rule 3.8(d) and discussing the conflicting results in *Attorney C* and *Jordan*).

[¶ 19] Feland urges that we follow *Attorney C* and engraft an intent element onto the requirements of Rule 3.8(d). We believe, however, that such a result would go beyond the clear language of the rule and constitute amendatory rulemaking within an ongoing disciplinary proceeding.

[¶ 20] Ultimately, the issue in this case boils down to interpretation of the language of Rule 3.8(d). Interpretation of the Rules of Professional Conduct, like the interpretation of statutes, is a question of law for the Court to decide. *Disciplinary Board v. McKechnie*, 2003 ND 22, ¶ 15, 656 N.W.2d 661. When we interpret a rule, we apply the established rules of statutory construction and look to the language of the rule to determine its meaning. *State v. Ebertz*, 2010 ND 79, ¶ 8, 782 N.W.2d 350.

[¶ 21] The primary objective in interpreting a rule or statute is to determine and give effect to the intent of the drafters by first looking at the language of the rule or statute. *See, e.g., Arnegard v. Cayko*, 2010 ND 83, ¶ 10, 782 N.W.2d 54. We give words their plain, ordinary, and commonly understood meaning and construe the rule as a whole. *Ebertz*, 2010 ND 79, ¶ 8, 782 N.W.2d 350. If the language of a rule or statute is clear and unambiguous, the letter of the rule or statute may not be disregarded under the pretext of pursuing its spirit. *See* N.D.C.C. § 1–02–05; *City of Lincoln v. Johnston*, 2012 ND 139, ¶ 5, 818 N.W.2d 778. Accordingly, the drafters must be presumed to have meant what they have plainly expressed, and it is presumed they intended all that they said, and they said all that they intended to say. *State v. Dennis*, 2007 ND 87, ¶ 12, 733 N.W.2d 241; *Little v. Tracy*, 497 N.W.2d 700, 705 (N.D. 1993); *see also State v. Myers*, 73 N.D. 687, 710, 19 N.W.2d 17, 29 (1945) ("[t]he [drafters] must be presumed to have meant what [they] said, and all that [they] said, and nothing else").

[¶ 22] Rule 3.8(d) is not ambiguous. It clearly provides a prosecutor "shall ... disclose to the defense at the earliest practical time all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense." The drafters did not limit its application only to intentional violations. Furthermore, the drafters of the Rules of Professional Conduct demonstrated they knew how to include a specific mens rea if one was intended. *See* N.D.R. Prof. Conduct 3.3(a) and 3.4(c). Rule 3.8(d) creates an affirmative duty upon a prosecutor to disclose all known exculpatory materials, and the plain language of the rule does not create an exception for unintentional violations.

[¶ 23] In addition to exceeding the plain language of the rule, the interpretation urged by Feland would create practical concerns. If Rule 3.8(d) were held to apply only to intentional withholding of evidence, a prosecutor who routinely failed to employ appropriate office procedures to ensure exculpatory materials were provided to the defense, resulting in a recurring pattern of negligent but unintentional violations, would not be subject to discipline under Rule 3.8(d). We do not share the *Attorney C* court's belief that such less-culpable violations will always be adequately remedied by the discovery process in the underlying criminal cases. *See Attorney C*, 47 P.3d at 1173–74. Rather, we believe adequate protection of the public, particularly those persons accused of a crime, requires that prosecutors not only refrain from intentionally withholding exculpatory evidence but that they conform their conduct so they do not knowingly or negligently withhold such evidence. We also note the difficulty in proving that a prosecutor intentionally withheld evidence.

In most cases there will not be direct evidence unequivocally demonstrating that the prosecutor purposefully and intentionally refused to disclose the evidence or information. If the Court were to engraft an intent requirement onto Rule 3.8(d) as urged by Feland, proof of such intent by clear and convincing evidence would be extremely difficult.

[¶ 24] Feland contends the hearing panel's recommendations create strict liability on prosecutors whenever a document is not produced, even if the prosecutor intended to produce the document and regardless of whether the defendant was prejudiced. We do not read the disciplinary rules to create strict liability upon the prosecutor. Rather, the Rules of Professional Conduct must be read in context with the other rules governing the disciplinary process. The North Dakota Standards for Imposing Lawyer Sanctions outline the appropriate forms of discipline, and the relevant factors for selecting one sanction over another include the lawyer's mental state. N.D. Stds. Imposing Lawyer Sanctions 3.0. The standards generally recognize three levels of culpable conduct—intentionally, knowingly, and negligently. The lowest level of sanction—admonition—requires negligent conduct, and there is no sanction recommended for conduct which does not reach the level of negligence. Accordingly, because there is no available sanction for conduct that falls below the negligence culpability standard, Rule 3.8(d) does not create strict liability, and a prosecutor is not subject to discipline for conduct that is not committed intentionally, knowingly, or negligently.

[¶ 25] We conclude the reach of Rule 3.8(d) is not limited to a prosecutor's intentional failure to disclose exculpatory evidence, but also applies to a knowing or negligent failure to disclose. .

## IV

[¶ 26] Feland contends that even if Rule 3.8(d) applies to a negligent failure to disclose exculpatory evidence, the record in this case does not support a finding that she negligently failed to disclose the Wahl memo.

[¶ 27] Feland concedes the Wahl memo should have been provided to Hoffman. She contends, however, that the record shows Bless sent the memo to Hoffman. The hearing panel heard conflicting evidence on this issue. Feland testified the Wahl memo was included in a stack of documents she gave to Bless to copy and send to Hoffman. Bless testified she sent the documents to Hoffman and believed the Wahl memo was included, but did not "know for certain" that it was. The State's Attorney's Office discovery checklists did not list the Wahl memo, and Hoffman testified he did not receive the Wahl memo before trial.

[¶ 28] The hearing panel found Feland did not disclose the Wahl memo to Hoffman. Although we review disciplinary proceedings de novo, we recognize the hearing panel has the opportunity to hear the witnesses and observe their demeanor. *E.g., Disciplinary Board v. Stensland,* 2011 ND 110, ¶ 10, 799 N.W.2d 341. We therefore accord special deference to the hearing panel's findings on matters of conflicting evidence and the credibility of witnesses. *Id.* Accordingly, we agree with the hearing panel's finding that the Wahl memo was not disclosed to Hoffman before trial.

[¶ 29] Having determined the Wahl memo was not disclosed before trial, we must next consider whether Feland acted with the required culpability—intentionally, knowingly, or negligently. The evidence presented to the hearing panel

demonstrated that the Blunt criminal case was originally dismissed after the preliminary hearing, and the State appealed. *See Blunt I*, 2008 ND 135, ¶ 3, 751 N.W.2d 692. Feland received the Wahl memo while the appeal was pending. When the dismissal was reversed on appeal, Feland gave Bless the stack of documents that had been accumulating while the appeal was pending and directed Bless to send copies to Hoffman.

[¶ 30] Feland and Bless testified regarding the checklist procedure they used to track discovery in the Blunt case. As documents were provided to the defense in discovery, they were to be recorded on a written checklist. In addition, there were billing invoices showing the amount defense counsel was billed when copies were provided. Both Feland and Bless admitted they discovered after trial that the discovery checklists and billing invoices in the Blunt case did not always match up, indicating that there were some billing invoices with no corresponding checklist and some checklists with no corresponding invoice. As Feland candidly testified:

> [W]hen it became apparent after the trial that there was a problem, that was actually my question too, because it seemed to me that there should be something here. So then I said to Kim, Do you keep anything else? Do we have any other kind of records that show what we sent out? And she's like, Well, I do—I bill, so she goes, We can look at billing invoices. So then we started comparing the billing invoices—or I had her do that.
>
> We had—unfortunately, we had billing invoices that we couldn't find a checklist for. We had checklists where there was no billing invoice sent out. I can't answer that, other than to say yeah, but I didn't know about it, and—
>
> Q. You didn't know about it, but you agree that you're responsible for it?

> A. I am responsible for it.
>
> Q. You're the responsible attorney as the prosecutor.
>
> A. Absolutely I am. It's my responsibility to make sure that stuff goes out. And if I can add, had I had a clue during the trial that something was missing, I would have made further inquiries then. . . . I mean I understand—and I—I take full responsibility for the fact that it is—it is my job to make sure everything goes out and that was the direction that I had given. Everything in the file needs to go.

[¶ 31] The record also indicates Hoffman made repeated discovery requests seeking additional information during the period leading to trial. In addition, Feland expressly advised the district court in a pretrial conference in the criminal case that she had gone through the file to make sure all discovery had been provided:

> As soon as the Supreme Court came back indicating, yes, there was sufficient evidence for probable cause, then as I indicated, we went through the file and anything that we had had in there that had not been sent, we made sure that was sent out. At that same time we started going through things in preparation for trial to make sure that, you know, we had all of our ducks in a row, if you will. If all of the witnesses were properly listed, if all of the exhibits and things that we were looking at had been provided to Mr. Hoffman. And we have been continuing to provide that information.

[¶ 32] On the basis of this record, the hearing panel concluded Feland's conduct would constitute a violation of Rule 3.8(d) even if an intent element were implied:

> However, even when an intent requirement is implied, we conclude that a violation of Rule 3.8 has occurred in this

case. The State Attorney's office tracked disclosure through numerous discovery checklists to Hoffman. This very good procedure would have allowed the State to confirm that everything had been provided to defense counsel. However, despite repeated requests by Hoffman to review the disclosures, no effort was made by Feland to ensure that the Wahl memo and other important documents were listed on discovery checklists. Given the repeated requests by Attorney Hoffman, the failure by Feland to disclose the Wahl memo was so reckless as to constitute a knowing disregard of the discovery requirement contained in Rule 3.8. Accordingly, the Panel concludes Cynthia M. Feland either knew or should have known that the Wahl memo was not provided to defense attorney Michael Hoffman.

[¶ 33] We believe the hearing panel has overstated Feland's culpability. The relevant definitions of the various levels of culpability for purposes of the disciplinary process are found in the "Definitions" prologue to the North Dakota Standards for Imposing Lawyer Sanctions:

"Intent" is the conscious objective or purpose to accomplish a particular result.

"Knowledge" is the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result.

"Negligence" is the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation.

There is nothing in this record demonstrating that Feland had a "conscious objective or purpose" to withhold the Wahl memo, or that she had a "conscious aware-

ness" or actual knowledge that it had not been sent. At most, Feland's failure to more closely monitor the discovery process and review the discovery checklists, particularly in light of Hoffman's repeated discovery requests and her explicit assurance to the district court that the files had been reviewed and all relevant documents had been provided, constituted a "failure ... to heed a substantial risk" that the document had not been provided and was negligent.

[¶ 34] We are mindful of the concern raised that Feland is being disciplined in part because the Burleigh County State's Attorney's Office has implemented a discovery checklist procedure in an attempt to improve discovery compliance, but we recognize that use of such a procedure may create a double-edged sword for prosecutors. Although such a procedure is designed primarily to ensure that defendants' rights are protected and all exculpatory materials are provided, it also offers some measure of protection to the prosecutor from claims under *Brady*, Rule 16, and Rule 3.8(d) when the checklist confirms that a particular document was provided to the defense. If the checklist does not list the document in question, however, it raises an inference the document was not provided. And when, as in this case, the record indicates haphazard and careless adherence to the checklist procedure, with missing checklists and billing invoices, it suggests negligence when the prosecutor fails to take additional steps to adequately ensure that all appropriate documents have been provided to the defense.

[¶ 35] Feland argues that even if she negligently failed to disclose the Wahl memo, this Court has indicated in *Disciplinary Board v. McKechnie*, 2003 ND 22, 656 N.W.2d 661, and *Disciplinary Board v. Hoffman*, 2005 ND 153, 703 N.W.2d 345, that an isolated act of negligence should not be the basis for disciplinary action. In

those cases, the attorneys had negligently missed deadlines in their clients' cases. McKechnie challenged the hearing panel's finding that his conduct violated N.D.R. Prof. Conduct 1.1, which states that "[a] lawyer shall provide competent representation to a client." Hoffman challenged a hearing panel's findings that his conduct violated both N.D.R. Prof. Conduct 1.1 and 1.3, which states that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." Under the facts in those cases, this Court concluded a single isolated act of ordinary negligence, without evidence of other negligent or egregious conduct, did not establish by clear and convincing evidence a violation of Rules 1.1 or 1.3. *Hoffman*, at ¶¶ 9–17; *McKechnie*, at ¶¶ 23–26. Feland argues *Hoffman* and *McKechnie* dictate that an attorney may not be subject to discipline for an isolated act of negligence.

[¶ 36] Feland reads *Hoffman* and *McKechnie* much too broadly. Those cases do not stand for the general proposition that an attorney may never be disciplined for a single act of negligence. The rules allegedly violated in *Hoffman* and *McKechnie* were broad, open-ended proscriptions against incompetence and lack of diligence. Our holdings in those cases suggest only that an isolated act of negligence will not necessarily satisfy the broad, generic concepts of incompetence or lack of diligence.

[¶ 37] The rationale underlying *Hoffman* and *McKechnie* does not apply when an attorney is alleged to have violated a disciplinary rule that expressly mandates or proscribes specific, defined conduct. Rule 3.8(d) does not set out a generic standard such as incompetence or diligence. Rather, it definitively spells out the exact conduct required of the attorney: a prosecutor "shall ... disclose to the defense ... all evidence or information

known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense." While *Hoffman* and *McKechnie* suggested that a pattern of misconduct may be necessary to establish incompetence or lack of diligence, they do not hold that an attorney may never be disciplined for a single act of negligent conduct.

[¶ 38] We find nothing in the disciplinary rules suggesting that proof of a pattern of misconduct is required before an attorney may be held responsible for a negligent failure to comply with a specifically delineated ethical requirement such as Rule 3.8(d). Furthermore, we note that the North Dakota Standards for Imposing Lawyer Sanctions expressly recognize that an "isolated instance" of negligence may warrant a disciplinary sanction. N.D. Stds. Imposing Lawyer Sanctions 4.34, 4.54, 4.64, 5.24, 6.14, 6.24, 6.34, and 7.4. There is no general prohibition against disciplining a lawyer for a single, isolated instance of negligence. *See In re Hessinger & Assocs.*, 171 B.R. 366, 368 n. 3 (Bankr.N.D.Cal.1994), *aff'd in part and rev'd in part on other grounds*, 192 B.R. 211 (N.D.Cal.1996) ("[i]n dealing with violations of ethical rules ... [l]awyers are not entitled to one free bite").

[¶ 39] We conclude Disciplinary Counsel established by clear and convincing evidence that Feland violated Rule 3.8(d) by negligently failing to disclose the Wahl memo.

V

[¶ 40] Having concluded Feland violated Rule 3.8(d), we must determine the appropriate sanction. The hearing panel recommended a 60–day suspension, applying N.D. Stds. Imposing Lawyer Sanctions 5.12, 5.22, 6.12, and 6.22. Those provisions of the Standards generally apply when a lawyer has acted knowingly,

and the hearing panel based its reliance on those provisions on its conclusion that Feland's conduct was "so reckless as to constitute a knowing disregard of the discovery requirement contained in Rule 3.8," she "either knew or should have known that the Wahl memo was not provided to defense attorney Michael Hoffman," and her conduct was so egregious it would have satisfied an intent requirement if one were implied.

[¶ 41] We have concluded, however, that the record establishes only that Feland negligently failed to disclose the Wahl memo. Under the facts in this case, determination of the appropriate sanction implicates N.D. Stds. Imposing Lawyer Sanctions 5.23, 5.24, 6.23, and 6.24:

5.23 Reprimand is generally appropriate when a lawyer in an official or governmental position negligently fails to follow proper procedures or rules, and causes injury or potential injury to a party or to the integrity of the legal process.

5.24 Admonition is generally appropriate when a lawyer in an official or governmental position engages in an isolated instance of negligence in not following proper procedures or rules, and causes little or no actual or potential injury to a party or to the integrity of the legal process.

. . . .

6.23 Reprimand is generally appropriate when a lawyer negligently fails to comply with a court order or rule, and causes injury or potential injury to a client or other party, or causes interference or potential interference with a legal proceeding.

6.24 Admonition is generally appropriate when a lawyer engages in an isolated instance of negligence in complying with a court order or rule, and causes little or no actual or potential

injury to a party, or causes little or no actual or potential interference with a legal proceeding.

[¶ 42] The choice between a reprimand and an admonition thus generally depends upon whether the lawyer has committed only an isolated instance of negligence and the degree of harm caused. The facts in this case support the conclusion that only an admonition is warranted. The only allegation against Feland in the petition for discipline is the failure to disclose the Wahl memo, and thus we have found only a single, isolated instance of negligence, which weighs in favor of an admonition rather than a reprimand.

[¶ 43] We further conclude Feland's failure to disclose the Wahl memo caused little or no actual injury to Blunt. According to Blunt, Disciplinary Counsel, and the hearing panel, the crucial information in the Wahl memo was the last sentence:

Due to the new information provided by Mr. Blunt, we determined, in consultation with a representative of the Attorney General's Office, there was not a voluntary resignation so it was determined to drop the recommendation we had drafted.

At the time of trial, Hoffman had copies of what was labeled "C99," a document created by the auditors that contained the same information as the Wahl memo, including the auditors' eventual conclusion that Spencer's resignation was not voluntary. As we explained in *Blunt III*, 2011 ND 127, ¶ 18, 799 N.W.2d 363:

Furthermore, Blunt possessed but did not use other evidence that contained the same information about the State Auditor's decision on the relocation expenses. The C99, which is part of a document from the State Auditor's Office about the WSI audit, addressed the issue of whether Blunt had an obligation

to attempt to recover any of the funds WSI paid to Spencer to reimburse his relocation expenses and said, "Eventually we were told (and convinced) the separation was other than voluntary." There was evidence, and Blunt's attorney conceded, Blunt had a copy of the C99 with the handwritten notes prior to trial. The handwritten notes stated, "based on discussions with Attorney General's Office determination was made the separation was other than voluntary; letter offering position requires 50% pay back if leave voluntarily in first 2 years." Blunt did not use the information in either version of the C99 during the trial. He claims he did not use the C99 because there was no context to it, he did not know when it was created, and it might "open up a can of worms" and could lead to testimony that he lied to the auditors about Spencer's resignation. The Wahl memo also contained information that could raise similar issues. The memo included statements that Blunt withheld information about Spencer's resignation from the auditors and knew his actions were wrong.

[¶ 44] In this context, we lay to rest the notion, propounded by Blunt in *Blunt III* and by Disciplinary Counsel in this case, that the Wahl memo was somehow akin to a "smoking gun" which conclusively established that Blunt's refusal to seek recoupment of Spencer's relocation expenses was not improper and that Feland's pursuit of the allegation in the criminal trial was inappropriate. The last sentence of the Wahl memo merely recounts the auditors' decision not to include a recommendation on the relocation expenses, based upon Blunt's assurance that Spencer's resignation was not voluntary. It did not constitute a binding legal determination of any fact, and certainly did not preclude Feland from independently investigating the facts surrounding Spencer's

resignation and presenting evidence to the jury to support the allegation that Spencer's resignation was, in fact, voluntary and that Blunt should have pursued recoupment of the relocation expenses.

[¶ 45] We conclude Feland's failure to disclose the Wahl memo constituted an isolated instance of negligence that caused little or no actual injury to any party. Therefore, admonition is the appropriate sanction under N.D. Stds. Imposing Lawyer Sanctions 5.24 and 6.24.

[¶ 46] We recognize that an admonition is intended to be a non-public form of discipline, *see* N.D. Stds. Imposing Lawyer Sanctions 2.5, and would ordinarily be issued by an Inquiry Committee. *See* N.D.R. Lawyer Discipl. 2.4(E)(3). At this point in these proceedings, however, any sanction we impose will be de facto public. We have previously noted the irony presented when this Court must determine whether a public reprimand or a private admonition is the appropriate sanction for a violation of the disciplinary rules:

> In the standards, "reprimand" means "public reprimand," while "admonition" denotes "private reprimand." NDSILS 2.4 and 2.5. The question here is the extent of the injury for selection of the correct sanction.
>
> Ironically, this dispute about the correct sanction results in publicizing the sanction, even if we apply a private reprimand. Still, the public airing has the wholesome aspect of informing other lawyers, thereby discouraging similar carelessness. The differential in our decision lies largely in the severity of the offense on this lawyer's record.

*Disciplinary Board v. Becker*, 504 N.W.2d 303, 304 (N.D.1993) (citation omitted). Although there may be little or no distinction between the practical effect of a reprimand or an admonition when the "private" admo-

nition is announced in a published opinion of this Court, the distinction is important to the extent that the sanction defines the severity of the offense on the lawyer's disciplinary record. *See id.* As in *Becker,* we conclude admonition is the appropriate sanction in this case.

## VI

[¶ 47] The hearing panel recommended Feland be ordered to pay costs of the disciplinary proceeding in the amount of $11,272.21.

[¶ 48] The assessment of costs is a sanction imposed when a lawyer has engaged in professional misconduct. *Disciplinary Board v. Ward,* 2005 ND 144, ¶ 20, 701 N.W.2d 873; *see* N.D. Stds. Imposing Lawyer Sanctions 2.7(b); N.D.R. Lawyer Discipl. 1.3(A)(9). Costs imposed against the disciplined lawyer ordinarily include reasonable attorney fees for Disciplinary Counsel. *Disciplinary Board v. Boughey,* 1999 ND 205, ¶ 13, 602 N.W.2d 268. Under N.D.R. Lawyer Discipl. 1.3(D), costs and expenses of the disciplinary proceeding must be assessed against a disciplined attorney "[u]nless otherwise ordered by the court or hearing panel." *See also Ward,* at ¶ 22; *Boughey,* at ¶ 13. Thus, this Court has discretion to "otherwise order" payment of costs and expenses.

[¶ 49] We do not believe Feland's conduct warrants assessment of the full $11,272.21 in costs and expenses. We have concluded Feland committed a single, isolated negligent act that caused little or no injury to any party. Her conduct warrants only an admonition, which would ordinarily be imposed by an Inquiry Committee without formal proceedings or an evidentiary hearing. Virtually all of the costs and fees sought by Disciplinary Counsel are directly related to the formal proceedings and evidentiary hearing. Dis-

ciplinary Counsel's affidavit of costs and expenses seeks $893.46 in hearing panel expenses; $4,273.75 for transcripts; and $6,105.00 in attorney fees for 81.4 hours at $75 per hour. Of these expenses, only 1.6 hours of attorney time appear to predate the drafting of the petition for discipline and commencement of formal proceedings.

[¶ 50] Under the unique circumstances in this case, we conclude it would be appropriate to require Feland to pay partial costs and expenses of the disciplinary proceeding in the amount of $5,636.10, representing fifty percent of the total costs and expenses. *See Ward,* 2005 ND 144, ¶ 22, 701 N.W.2d 873 (when attorney was found to have committed only one of five alleged violations, this Court adopted hearing panel's recommendation that attorney be required to pay only 20 percent of the total costs and expenses of the disciplinary proceeding). Accordingly, we order Feland to pay partial costs and expenses of the disciplinary proceeding in the amount of $5,636.10.

## VII

[¶ 51] We conclude Feland violated N.D.R. Prof. Conduct 3.8(d). We order that she be admonished and that she pay partial costs and expenses of the disciplinary proceeding in the amount of $5,636.10.

[¶ 52] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, DANIEL J. CROTHERS, MARY MUEHLEN MARING, JJ. and ALLAN L. SCHMALENBERGER, S.J., concur.

[¶ 53] ALLAN L. SCHMALENBERGER, S.J., sitting in place of KAPSNER, J., disqualified.